Estate of Tinker: Hessman, Administratrix, Appellant, vs. State Board of Control, Respondent.

*March 17—April 12, 1938.*

For the appellant there was a brief by *Hill, Beckwith & Harrington,* and oral argument by *George A. Solsrud,* all of Madison.

For the respondent there was a brief by *Blaine M. Linke,* collection and deportation counsel, and *Paul B. Knuese,* assistant collection and deportation counsel, and oral argument by *Mr. Knuese.*

WICKHEM, J.    There is no issue of fact in this case. Deceased Susan Tinker was at various times from May, 1886, to July, 1936, an inmate of Mendota state hospital and Dane county asylum.    The account filed by the State Board of Control indicates the periods during which she was given care and maintenance.[1]    The payments to the institutions are

---

[1] For Care and Maintenance at MENDOTA STATE HOSPITAL, Mendota, Wisconsin

| DATES | | TIME | PER CAP. | CLOTH | TOTAL |
|---|---|---|---|---|---|
| 5- 8-86 to | 7-25-86 | 11 weeks, 2 days | $3.00 | $ | $ 33.86 |
| 2-15-94 to | 3-26-94 | 6           6 | 3.00 | | 17.57 |
| 2- 5-13 to | 4- 3-13 | 8           2 | 3.00 | | 24.86 |
| 4- 4-13 to | 6- 2-13 | 8           4 | 3.00 | | 25.71 |
| 9- 8-15 to | 6-30-16 | 42          2 | 3.00 | | 126.86 |
| 7- 1-16 to | 5-22-17 | 46          4 | 3.00 | | 139.71 |
| 5-23-17 to | 6-30-17 | 5           4 | 5.52 | | 30.75 |
| 7- 1-17 to | 6-30-18 | 52          1 | 5.60 | | 292.00 |
| 7- 1-18 to | 6-30-19 | 52          1 | 5.90 | | 307.64 |
| 7- 1-19 to | 8- 8-19 | 5           4 | 7.16 | | 39.89 |
| 1-21-20 to | 4-14-20 | 12          1 | 7.16 | | 86.94 |
| 9-13-20 to | 12-21-20 | 14          2 | 7.44 | | 106.29 |
| 12-27-20 to | 6-30-21 | 26          4 | 7.44 | | 197.69 |
| 7- 1-21 to | 6-30-22 | 52          1 | 8.67 | | 452.08 |
| 7- 1-22 to | 6- 7-23 | 48          6 | 8.40 | | 410.40 |
| 6-12-23 to | 6-30-23 | 2           5 | 8.40 | | 22.80 |
| 7- 1-23 to | 10-11-23 | 14          5 | 8.51 | | 125.22 |
| 10-20-23 to | 6-30-24 | 36          3 | 8.51 | | 310.01 |
| 7- 1-24 to | 6-30-25 | 52          1 | 9.16 | | 477.63 |
| 7- 1-25 to | 6-30-26 | 52          1 | 8.44 | | 440.09 |
| 7- 1-26 to | 6-30-27 | 52          1 | 8.38 | | 436.96 |
| 7- 1-27 to | 10- 7-27 | 14          1 | 8.08 | | 114.27 |

For Care and Maintenance at DANE COUNTY ASYLUM, Verona, Wisconsin

| DATES | | TIME | PER CAP. | CLOTH | TOTAL |
|---|---|---|---|---|---|
| 10- 7-27 to | 6-30-35 | (Maintenance Paid) | | | |
| 7- 1-35 to | 6-30-36 | 52 weeks, 2 days | 4.50 | 7.00 | 242.31 |
| 7- 1-36 to | 8-13-36 | 6 weeks, 2 days | 4.50 | | 28.29 |

$4,489.83

indicated on this account and are four in number, the first on November 17, 1922, and the last on October 26, 1934. The trial court held that the first two items in the state's account, going back to 1886 and 1894, were barred by the statute of limitations, and after subtracting the charges for these two periods allowed the claim for the balance.

The principal contention of defendant is that the statute of limitations has run upon all items which accrued prior to 1920. This contention is based upon the fact that the period of limitations on actions on behalf of the state was by sec. 4229, Stats. 1919, fixed at ten years. It is contended that the matter of recovering for care and maintenance of insane persons having property or estate was regulated by sec. 600 and sec. 604*q*, Stats. 1913. Sec. 600 reads as follows:

"The several district attorneys, under the direction of the respective county boards, shall, in the name of the county, sue for and collect from the property of any patient maintained at a state hospital or county asylum for the insane, at the cost of the county, or from any person legally bound to support such patient, the amount charged to and by such county for such support; and in the case of the decease of any such patient, before payment for such maintenance, such district attorney shall in the name of the county file against the estate of such deceased person as a claim and may have allowed proper charges for the maintenance of such patient pursuant to law; and the duplicate statement of the board of control to the county clerk as to a state hospital, and of the trustees as to a county asylum, shall be presumptive evidence respectively of the correctness of the amount due from such county to the hospital for the maintenance and clothing of such hospital patient, and of the amount due to the county for the maintenance of such patient in county asylum and state hospital."

| Payments to Institution: | 11-17-22 | 200.00 | |
| | 2-26-23 | 400.00 | |
| | 8-24-27 | 562.38 | |
| | 10-26-34 | 67.89 | |
| Payments to Bd. of Cont: | 2- 6-36 | 98.37 | 1,328.64 |
| | | Total | $3,161.19 |

Sec. 604*q* reads, in part, as follows:

"1. The property and estate of any insane person kept in any state or county hospital or county asylum or kept by any county as its charge and the property and estate of any deceased person who shall have been a patient of such hospital or asylum shall be liable for the continuing and past support, maintenance of such person or patient and chargeable for the payment thereof.

"2. Upon failure of the person having the charge or custody of such property or estate during the lifetime of such person to pay therefrom for such support, and maintenance and the state board of control, the board of trustees of the asylum or the chairman of the board of the county for furnishing such support, or the district attorney of such county, may apply to the proper county judge or court to compel such payment; such judge or court shall have the jurisdiction and authority conferred by chapter 63 and shall exercise the same in the manner provided by said chapter and may enforce obedience to his orders or judgments by proceedings as for contempt. And after time for appeal has expired from any order or judgment for the payment of money for such maintenance and support, the county shall have execution therefor.

"3. In case of the decease of any such insane person leaving estate, such board of trustees or chairman or district attorney of the county furnishing such support or maintenance may, as a creditor, have administration proceedings brought in the proper county court, and, upon the granting of administration, and within the usual time, may present to the administrator and file as a claim and have allowed proper charges for the support and maintenance of such patient as herein indicated."

Until 1919 there was no provision to the effect that the statute of limitations would not be a defense in actions to recover under secs. 600 and 604*q*. In 1919, however, the legislature enacted sec. 49.10, Stats. (secs. 11, 12, ch. 345, Laws of 1919), which constitutes a revision of the earlier sections dealing with this subject and provides:

"In any such action or proceeding the statutes of limitation shall not be pleaded in defense."

It is contended by defendant that sec. 49.10 is prospective rather than retrospective in operation, first, because such laws are presumed to be prospective in the absence of a clear indication to the contrary; and, second, because of the operation of sec. 4976, Stats. (now sec. 370.06), which reads as follows:

"In any case when a limitation or period of time prescribed in any act which shall be repealed for the acquiring of any right, or barring of any remedy, or for any other purpose shall have begun to run before such repeal and the repealing act shall provide any limitation or period of time for such purpose, such latter limitation or period shall apply only to such rights or remedies as shall accrue subsequently to the time when the repealing act shall take effect, and the act repealed shall be held to continue in force and be operative to determine all such limitations and periods of time which shall have previously begun to run unless such repealing act shall otherwise expressly provide."

In *Thom v. Sensenbrenner,* 211 Wis. 218, 247 N. W. 870, this court held that, where the legislature had extended the period of the statute of limitations, sec. 370.06 came into operation and prevented the application of the new period to actions which had already accrued at the time of the enactment of the new statute. Plaintiff contends that a different situation is presented by this case for the reason that sec. 49.10 provides no new or different period of limitations but wholly destroys the defense, and that consequently sec. 370.06 has no application to the present situation. We think this is too narrow a view of sec. 370.06. If the statute applies to a situation where the period of the statute of limitations has been increased, it ought also to apply where the period has been increased to infinity and the defense of the statute wholly cut off. This is in accordance with the usual rule that statutes changing the period of limitations are deemed to be prospective in operation in the absence of express provisions to the contrary. It is, of course, beyond

question that it is within the competency of the legislature to repeal statutes of limitation and to make the repeal effective as to causes of action which have accrued but which have already not been barred by the statute. However, it is not to be presumed that such was the legislative intent unless this intent is clearly so expressed. Sec. 49.10 contains no intimation of an intent to have the statute operate retrospectively, and, as we have said, sec. 370.06 operates to preserve the old limitation as to all causes which had accrued prior to its enactment. It follows that defendant's contention is sound and that the judgment should be modified by subtracting therefrom all portions of the account accruing prior to June 16, 1919, the date of publication of sec. 49.10, Stats. 1919.

It is contended that the four payments of the guardian amounting to $1,328.64 had the effect of tolling the statute of limitations. An examination of the record does not sustain this contention. It appears that the guardian was billed for the period from December 27, 1920, to November 26, 1922, for $600, and that in response to this bill he made two payments, one of $200 and one of $400. It further appears that his three subsequent payments were also in response to current bills furnished him by the state. There is no evidence that he ever made any payments on accounts antedating December 27, 1920.

Defendant further contends that the facts of this case require a finding that there was an account stated. The effect of this contention apparently is twofold: (1) That since the alleged account stated dealt with a period beginning December 27, 1920, this constituted a waiver of any earlier charges; and (2) that the state is now precluded from revising its bill, claiming a higher weekly charge than that contained in its original bills to the incompetent's guardian. In *Wussow v. Badger State Bank*, 204 Wis. 467, 476, 234

N. W. 720, 236 N. W. 687, an account stated is thus defined:

"But an account stated is an agreement between debtor and creditor that the items of the transactions between them are correctly stated in a statement rendered, that the balance shown is owing by the one party to the other, and that the one promises to pay that balance to the other."

Waiving the question whether the employees of the state hospital who made out the bill rendered to incompetent's guardian had any authority to state the account at less than the actual *per capita* cost prescribed by statute, it seems clear to us that there is no evidence in the record of an account stated as defined in the *Wussow Case*. We think defendant's contention in this respect is without merit.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.