STATE DEPARTMENT OF PUBLIC WELFARE, Appellant,
vs. SHIRLEY and wife, Respondents.

*May 18—June 16, 1943.*

278

*Blaine M. Linke,* collection and deportation counsel, and *Ralph C. Hartman,* law examiner, for the appellant.

For the respondents the cause was submitted on the brief of *G. E. Lovett* of Park Falls.

ROSENBERRY, C. J.   While there are a number of applicable statutory provisions relating to the right of the state or a county to recover for the maintenance of inmates in institu-

tions, for some reason best known to itself, the plaintiff puts these to one side and grounds this action which it has brought against the defendants upon the common law.

In order to determine the question raised by counsel in this case it is necessary for us to review as briefly as may be the statutory law of this state relating to the relief and maintenance of insane and poor persons.

In 1838, the territorial legislature passed a bill entitled An Act for the Relief of the Poor (p. 48), sec. 2 of which provided:

"Every poor person, who shall be unable to earn a livelihood, in consequence of bodily infirmity, idiocy, lunacy, or other unavoidable cause, shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers or sisters, of such poor person, if they, or either of them, be of sufficient ability. . . ."

Sec. 4 provided: "When any such poor person shall not have any such relatives, in any county in this territory, as are named in the preceding sections, or such relative shall not be of sufficient ability, or shall fail, or refuse, to maintain such pauper, then the said pauper, shall receive such relief as his or her case may require, out of the county treasury."

This was the first legislation passed in what is now the state of Wisconsin for the relief of poor persons. It placed the ultimate responsibility for relief upon the county of their residence. The constitution of the state of Wisconsin was adopted in 1848. The territorial statute was repealed by the Revised Statutes of 1849. Ch. 28 of the Revised Statutes of 1849 was entitled "Of the relief and support of the poor." Secs. 1 and 5 of this act were as follows:

"Sec. 1. Every town shall relieve and support all poor and indigent persons, lawfully settled therein, whenever they shall stand in need thereof. . . .

"Sec. 5. The father, mother, and children, being of sufficient ability, of any poor person who is blind, old, lame, impotent, or decrepit, so as to be unable to maintain himself, shall, at their own charge, relieve and maintain such poor person,

in such manner as shall be approved by the supervisors of the town where such person may be."

Secs. 6 to 12, R. S. 1849, inclusive, contain provisions to the effect that if any relative charged with the duty of maintenance of such poor person fails to discharge that duty, he may upon application be brought before the judge of the county court who shall determine what relatives of the poor person should support him and in what amount, and if the relatives fail to comply with the order of the county court the liability may be enforced by action.

In amended and modified form the provisions of ch. 28, R. S. 1849, have ever since been and still are in force in this state. By the enactment of this chapter, the primary responsibility for the relief of poor persons was placed upon the town of residence while the ultimate responsibility was placed on the named relatives who were liable in the order provided by statute.

The statutes of 1849 contained no provision for the confinement and maintenance of insane or incompetent persons.

Ch. 28 became ch. LXIII of the Revised Statutes of 1878. Secs. 1499 to 1505, inclusive, imposed the primary duty of relieving the poor upon the town in which the poor person was settled.

Sec. 1502, R. S. 1878, provided as follows:

"The father, mother and children, being of sufficient ability, of any poor person, who is blind, old, lame, impotent or decrepit, so as to be unable to maintain himself, shall, at their own charge, relieve and maintain such poor person in such manner as shall be approved by the supervisors of the town where such person may be. And upon the failure of any such relative so to do, the supervisors shall apply to the county judge for an order to compel such relief. . . ."

Secs. 1503, 1504, and 1505, R. S. 1878, provide the procedure for enforcing the liability of the person designated by the county judge in his order.

By ch. 102, Laws of 1871, provision was made for the Wisconsin State Hospital for the Insane. See Taylor's Stats., ch. LXXXII. By sec. 11 of that chapter the hospital was to be maintained at the expense of the state, the county in which the patient resided being required to pay $1.50 per week for the support of such patient;—

"and, provided further, that the relatives, friends or guardians of any patient may provide for the support of such patient as hereinafter provided."

No provision of the statute charged the maintenance of insane patients upon relatives; however, by sec. 17 of the chapter the relatives of any insane person had the right to take charge of and keep such person if they so desired.

By sec. 595, R. S. 1878, all insane persons, residents of the state, who might be admitted into a hospital for the insane for treatment, were to be maintained at the expense of the state with a contribution from the county of residence—

"and the relatives, friends or guardians of any patient shall have the privilege of paying his maintenance and clothing or any part thereof; and the accounts of such patients shall be credited with any sum so paid."

There was also a provision for special care by relatives.

By sec. 12, ch. 233, Laws of 1881, the estate of any insane person was made liable "for his support and maintenance." It was further provided that ch. LXIII, R. S. 1878, entitled "Of the Relief and Support of the Poor," should be applicable to enforce payment. This and other sections were rewritten and it became a part of sec. 604q of the Wisconsin statutes of 1898. Sec. 604e contained the following provision:

"The provisions of sections 1500 and 1505, both inclusive, are hereby made applicable to the support of insane persons."

By this provision the support of insane persons was for the first time charged upon the relatives named in sec. 1502, Stats. 1898.

Sec. 604e, Stats., was renumbered sec. 46.10 by sec. 15, ch. 328, Laws of 1919. Sec. 46.10 (1), Stats. 1919, provided:

"If the evidence does not disclose property sufficient to save the county harmless from the expenses of his support, the said court, judge, magistrate, or board shall ascertain, by further proof, the residence and financial ability of any person, if any, liable for such support pursuant to law, and shall order proper proceedings to be brought for the enforcement of such liability. . . . At the conclusion of said hearing the court, judge, magistrate, or board shall determine the chargeability for the support of such person and certify such determination to the superintendent of the institution; and thereupon such person shall be admitted." (A similar provision is found in sec. 46.10 (1a), Stats. 1939.)

By ch. 336, Laws of 1935, sec. 46.10 (1), Stats., was rewritten and as rewritten contained the following provision:

"The county in which said legal settlement is located shall be chargeable with the support and maintenance in the manner and to the extent provided by law. If it is found that said person does not have a legal settlement in any town, village or city, in this state, the state may be chargeable with all of the support and maintenance, provided the said court, judge, magistrate or board submits a transcript of the testimony taken for such a finding with respect to legal settlement to the state board of control, and the same is approved by said board and is so certified to the superintendent of the institution to which such person is committed or admitted."

By the same chapter sec. 49.10, Stats., was amended to read as follows:

"If any person at the time of receiving any relief, support or maintenance at public charge, under this chapter or *as an*

*inmate of any county or municipal institution* in which the state is not chargeable with all or a part of the inmate's maintenance or at any time thereafter, is the owner of property, the authorities charged with the care of the poor of the municipality, or the board in charge of the institution, chargeable with such relief, support or maintenance may sue for and collect the value of the same against such person and against his estate."

The last clause of sec. 51.08 (1), Stats., was amended by the same chapter to read as follows:

"All such charges shall be adjusted as provided in section 46.10, but nothing herein shall prevent the collection of the actual *per capita* cost of maintenance, or a part thereof by the state board of control or by the county in counties having a population of five hundred thousand or more, pursuant to law."

By the same chapter sec. 319.20 (1), Stats., was amended so as to authorize the state board of control to apply for the appointment of a guardian of any insane patient appearing to have property in the state.

By the same chapter, sec. 4, sec. 46.10 (7), Stats., was created. It is in part as follows:

"(7) The actual *per capita* cost, as defined by rule of the state board of control, of maintenance furnished an inmate of any state institution, or any county institution in which the state is chargeable with all or a part of the inmate's maintenance, may be recovered by the state board of control, or in counties having a population of five hundred thousand or more by the county, from such person or from his estate, or may be recovered from the husband or wife, father, children or mother of such person."

Ch. 336, Laws of 1935, was published August 8, 1935, so that Alvina Shirley was an inmate of the training school under the provisions of sec. 46.10, Stats., as amended by ch. 336 for the entire period except eight days, being the time between

July 31, 1935, when she was committed and the time when ch. 336 took effect.

It is to be noted that the revision made by ch. 336, Laws of 1935, omitted the language theretofore a part of sec. 46.10 (1), Stats., to the effect that—

"If the evidence does not disclose property sufficient to save the county harmless from the expenses of his support, the said court, judge, magistrate, or board shall ascertain, by further proof, the residence and financial ability of any person, if any, liable for such support pursuant to law, and shall order proper proceedings to be brought for the enforcement of such liability"—

and substituted therefor by the provisions of sec. 46.10 (7), Stats., the following:

"All or a part of the inmate's maintenance, may be recovered by the state board of control, or in counties having a population of five hundred thousand or more by the county, from such person, or from his estate, or may be recovered from the husband or wife, father, children, or mother of such person."

By sec. 46.10 (8) and (9), Stats., the following provisions were added:

"(8) The state board of control shall appoint an attorney at law, to be known as the 'collection and deportation counsel,' who shall make all reasonable and proper efforts, but shall give due regard in all cases to others who may be lawfully dependent upon such property for support, to recover the cost of maintenance furnished inmates and take such steps as may be necessary to arrange for their deportation. Said counsel shall investigate the financial condition of the inmates now in the state and county institutions, or heretofore or hereafter committed or admitted thereto, and of the relatives liable for the maintenance of such inmates, in order to determine the ability of any inmate or any such relative to make pay-

ment in whole or in part for the maintenance of said inmates, and shall investigate the legal settlement status of all said inmates in order to determine which cases, if any, are subject to deportation.

"(9) Such counsel shall have power to subpœna witnesses, take testimony under oath, and to examine any public records relating to the estate of an inmate or of a relative liable for his support or maintenance. . . ."

By the same chapter sec. 51.30, Stats. 1933, was repealed. It provided as follows:

"Whenever poor relief is granted to any person under chapter 49, or whenever a person is committed to any institution specified in chapters 50 and 51, and the expense of such relief or of such maintenance in such institution is chargeable to the state or any subdivision thereof, or both, the relatives of such person described in section 49.11 shall be liable to the state or any such subdivision in the manner and to the extent provided in sections 49.11 and 49.12. . . ."

The repeal of this section struck out any express statutory provision charging maintenance furnished under the provisions of chs. 50 and 51, Stats. It was while the statutory law was in this condition that the *Estate of Hahto* (1940), 236 Wis. 65, 294 N. W. 500, arose. Hahto was insane and had been confined at Mendota for more than ten years. On October 3, 1938, his wife died, leaving an estate of $1,430. Upon probate of her estate a claim was presented for Hahto's maintenance from August 9, 1935, to October 3, 1938, amounting to $1,008.56. The state sought to recover under the provisions of sec. 46.10 (7), Stats., claiming that that section created an absolute liability. The administrator denied that the obligation was absolute but alleged that no proceedings have been had under sec. 46.10 (8) and that the procedural steps required by sec. 49.11 had not been taken. The court sustained the position of the administrator and the state ap-

pealed. The opinion which sustained the position of the trial court did not deal with the question of liability but referred to procedure.

A casual reading of sec. 46.10 (7), Stats., indicates that the language of that section imposes no liability but merely authorizes the state and in certain instances, the county, to recover from the relatives therein named. The word "recover" is not an apt word to be used in a statute creating a liability. To recover in law means to have something awarded to a party to which he is already entitled. It clearly refers to recovery for maintenance as provided by sec. 49.11, there being no other statutory liability for maintenance after the repeal of sec. 51.30, Stats. 1933. If there is language in the *Estate of Hahto, supra,* which, by inference holds that liability was created by sec. 46.10 (7), it is withdrawn.

It is considered that while sec. 46.10 (7), Stats., authorizes the recovery of maintenance from relatives, it does not impose liability, and that the recovery must therefore be for liability under the provisions of sec. 49.11, even though at the time there was no statute which in express terms made sec. 49.11 applicable. Sec. 49.11 imposes the liability and sec. 46.10 (7) authorizes the state to recover on account of that liability in the manner there prescribed.

While secs. 46.10 (7), (8), and (9), Stats., are found in the chapter entitled "State Board of Control and Local Boards," they are in *pari materia* with ch. 49, Stats., "Relief and Support of the Poor," both chapters being found under title VII, "Charitable, Curative, Reformatory and Penal Institutions and Agencies." That they have been so considered by the legislature is apparent from the fact that for many years sec. 1502, Stats. 1878, now sec. 49.11, and subsequent sections, were incorporated by reference in what is now ch. 46, Stats.

We have already quoted the language from sec. 46.10 (1a), Stats. 1939, to the effect that if upon an examination by the

magistrate sufficient property was not disclosed, the magistrate was required to—

"ascertain, by further proof, the residence and financial ability of any person, if any, liable for such support pursuant to law."

This clearly referred to the provisions of sec. 49.11, Stats. 1919. The provisions now found in sec. 46.10 (8) and (9), Stats., are not a substitute for the summary procedure found in sec. 49.11. While the collection and deportation counsel is authorized to subpoena witnesses, take testimony, and examine public records, he is required to make no determination in respect thereto, nor do these sections provide for the giving of any notice to interested parties or provide a chance for a hearing or an appeal to a court in the event of an adverse examination.

It is also to be noted that by ch. 506, Laws of 1939, sec. 49.11 (1), Stats., was amended to read as follows:

"The father, mother, husband, children and wife of any poor person who is blind, old, lame, impotent or decrepit so as to be, *or for any other reason* is, unable to maintain himself, shall relieve and maintain such poor person," etc.

The words "or for any other reason" were inserted apparently to settle any question of doubt whether sec. 49.11, Stats., was applicable to cases of those who are poor because they are insane or mentally incompetent. If ch. 49, Stats., was not applicable to persons named in ch. 46, Stats., the amendment was useless. Throughout the history of these sections, the legislative purpose appears to have been to keep the two chapters harmonized although in some instances, not material here, harmony has not been achieved.

The legislative history of these statutory provisions indicates that from the beginning great care has been taken to protect relatives against claims for support of their dependents. All such statutes down to and including the present

time have required a showing that relatives are of sufficient ability to furnish the support as a condition precedent to liability for public support. The legislature could have had no intention to delegate discretion as to who should and who should not be liable to the collection and deportation counsel. He is not authorized to hold a hearing. A hearing without a notice is no hearing. It is a mere inquisition and may be properly carried on for the information of the collection and deportation counsel. He is not authorized to impose liability on the persons named in sec. 46.10, Stats.,—that is a function committed by statute to the county judge. It was stated on the argument that such a procedure would take up too much of the time of collection and deportation counsel. The rights of citizens ought not to be subordinated to convenience of counsel. Efficiency does not justify the exercise of arbitrary and uncontrolled power by any official.

We have made this investigation into the legislative history of chs. 46 and 49, Stats., for the reason that the collection and deportation counsel has seen fit to rest the right of recovery in this case upon the common law. To determine whether the common law is in force in this state, and to what extent it is in force, it is necessary for us to examine legislation upon the subject.

Although sec. 13 of art. XIV of our constitution provides that—

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of the state until altered or suspended by the legislature,"—

it remains for the court to determine in a particular case whether the common law has been suspended or whether the applicable statute governs. This court has dealt with the precise question which now confronts us under this section. In *Davis v. Estate of Davis* (1918), 167 Wis. 328, 167 N. W.

819, it was claimed that a wife who had voluntarily left her husband and lived in adultery with another, and the husband did not willingly reconcile her, was not entitled to claim dower in his estate. The defense of the estate to the widow's claim of dower was rested upon the provisions of ch. 34 of 13 Edw. I, enacted in 1285, and called the Statute of Westminster the Second. This statute provided:

"And if a wife willingly leave her husband, and go away, and continue with her advouterer, she shall be barred for every of action to demand her dower, that she ought to have of her husband's lands, if she be convict thereupon, except that her husband willingly, and without coertion of the church, reconcile her, and suffer her to dwell with him; in which case she shall be restored to her action."

The court reviewed the statutory law of this state from territorial days and held that the procedure of the common law with respect to the right of a married woman to dower in the lands of her husband was suspended by the laws of this state although no provision was to be found in the statutes of the state of Wisconsin covering the precise point in question and held that the claimant was entitled to dower in the lands of her deceased husband.

As we have already seen, the statutes relating to the liability of relatives for the support of poor persons much more exactly cover the subject than do the statutes in the case of the common law relating to dower. It is considered therefore that the liability of relatives for maintenance must be rested upon the statutes and not upon the common law.

Counsel argues that an action may be maintained under the common law for necessaries furnished to a person in need against those relatives charged with his support, and that the right of the state in that regard is the same as that of an individual. It is true that an individual may maintain such an action but that fact does not sustain counsel's position in

this case. There are no common-law precedents for plaintiff's position for the reason that at common law states and municipalities were not charged with the duty of supporting poor, insane, or incompetent persons. The duty of municipalities and states in that respect is wholly statutory. *Patrick v. Baldwin* (1901), 109 Wis. 342, 85 N. W. 274. See *Coffeen v. Preble* (1910), 142 Wis. 183, 125 N. W. 954. The question here is whether the state or its subdivisions furnishing maintenance pursuant to statute can maintain an action against relatives otherwise than authorized under the statute. This court has dealt with that precise question.

In *Saxville v. Bartlett* (1906), 126 Wis. 655, 105 N. W. 1052, the town of Saxville sought to recover for support, care, and medical attendance furnished to one Alexander Bartlett, father of the defendant. In that case the statute was not entirely disregarded. An application was made to the county judge under the provisions of sec. 1502, now 49.11, Stats., and subsequent sections, to determine who was liable for the father's support. Before the proceeding was concluded, the father died, and thereafter the judge made an order requiring the defendant to pay the sums expended by the town in the maintenance and burial of the father. The court said (p. 658):

"It is very apparent that these sections are prospective in their character, and do not contemplate that a town or an individual may proceed to relieve a pauper and afterwards recover the amounts expended of the proper relative, but rather that the supervisors, upon failure of such relative to maintain the pauper in a manner approved by them, may apply to the county judge to fix the manner and amount of the relief to be given by the relative or relatives in the future, and upon a failure to comply with that order may by action recover the amounts unpaid under the order for the use of the poor. This is plainly a case where a new right has been created and a complete remedy for its enforcement has been provided with it. The law is well settled that in such a case

the remedy provided is exclusive. [Citing cases.] This principle is too well established to be questioned at this time, and it is fatal to this case. The supervisors did not utilize the remedy provided by the statute, and hence the present action must fail."

The actions to which counsel referred are in the main actions for necessaries furnished to a wife or child. Such action could be maintained at common law and may still be maintained under a certain limited set of circumstances, mainly for temporary relief.

In *Saxville v. Bartlett, supra,* it is strongly intimated that an individual may not recover amounts expended in the care of a poor person from his relatives; that the right to recover in such a case is dependent upon the amount to be recovered being fixed by the county judge in accordance with the provisions of what is now sec. 49.11, Stats.

In the absence of a statute authorizing a municipality to recover for relief furnished to a poor person, there is respectable authority to the effect that such recovery cannot be had. These cases go upon the ground that the relief furnished is a charity and that in the absence of a statute there is no basis for recovery.

There are many persuasive reasons why the right of a state or municipality to recover for care furnished to the insane and incompetent should be limited. Where authorities in the exercise of the sovereign power of the state take out of a family a person who is being suitably maintained there and confine him in a public institution for the purpose of protecting society and promoting the general welfare, the case rests upon a different basis than where a relative charged by statute with the duty of support, being of sufficient ability, refuses to do his duty. See *Richardson v. Stuesser* (1905), 125 Wis. 66, 103 N. W. 261.

As was noted in the earlier law of this state relatives had the right to remove an insane person from the custody of the

state upon complying with certain statutory provisions. For many years no attempt was made to charge relatives with the support of the insane or the incompetent.

The right of the plaintiff in this case to recover being prescribed and limited by the statute, that procedure not having been followed, the plaintiff having no right to maintain an action at common law, the trial court properly sustained the demurrer.

*By the Court.*—The order appealed from is affirmed.