ESTATE OF CAMERON: STATE DEPARTMENT OF PUBLIC WELFARE, Appellant, vs. CAMERON, Administratrix, Respondent.

*September 13—December 18, 1946.*

*Blaine M. Linke,* collection and deportation counsel, for the appellant.

For the respondent there was a brief by *Hooker & Wagner* of Waupun, and oral argument by *E. W. Hooker.*

WICKHEM, J.   Decedent, an adult single person, was found insane and committed to the Winnebago State Hospital on June 25, 1926.   He remained at this institution until August 4, 1938, when he was transferred to the Outagamie county asylum at Appleton.   He remained here until his death on August 17, 1944.   Appellant, successor to the board of control, filed its claim in the county court against decedent's estate for care and maintenance during the entire period.   The court applied the ten-year statute of limitation to the claim and it is this that appellant complains of.   The heirs of decedent are two adult brothers.   Appellant contends that the claim of the State Department of Public Welfare from June 25, 1926, to August 17, 1934, is not barred by the statute of limitations.   This requires a study of the applicable statutes and the several decisions that have construed them.

In 1919, by ch. 345, of the laws of that year, secs. 600 and 604*q,* Stats., were consolidated with sec. 1505*a,* and the consolidated section was numbered 49.10.   Sec. 600 provided, in substance, that district attorneys under the direction of their

respective county boards "shall, in the name of the county, sue for and collect from the property of any patient maintained at a state hospital or county asylum for the insane," or from persons legally bound to support such patient, the amount charged to and by such county for such support. The section provided for filing claims against the estate of deceased persons. Sec. 604*q* provided that "The property and estate of any insane person kept in any state or county hospital or county asylum or kept by any county at its charge and the property and the estate of any deceased person who shall have been a patient of such hospital or asylum shall be liable for the continuing and past support, maintenance of such person or patient and chargeable for the payment thereof." Sec. 1505*a* was entitled "Action for poor relief" and provided in substance that if any person who heretofore or hereafter may receive support under ch. 63, Stats., in the county, town, city, or other municipal corporation of the state was at the time of receiving such relief the owner of property, the value of such relief and support shall be a legal and valid claim and debt against such person. The net result of the revision was to consolidate sections relating to the liability of and collection from insane persons for institutional care and maintenance with a section relating to the liability of and collection from indigents.

Sec. 49.10, Stats., provided that "if any person who has received any relief, support, or maintenance at public charge, under this chapter or as an inmate of any state or municipal institution, was at the time of receiving such relief, support, or maintenance the owner of property, the authorities charged with the care of the poor of the municipality, or the board in charge of the institution, chargeable with such relief, support, or maintenance may sue for and collect the value of the same against such person and against his estate. . . . The statutes of limitation shall not be pleaded in defense; but the court may, in its discretion, refuse to render judgment or allow the claim in favor of the claimant in any case where a parent, wife,

or child is dependent on such property for future support. . . ."

Under sec. 49.10, Stats., as enacted in 1919, it was held in *Guardianship of Decker,* 181 Wis. 484, 195 N. W. 316, that the only property subject to a claim for support was that possessed during the period when maintenance and support was given. The same construction was followed in *Guardianship of Angle,* 183 Wis. 648, 198 N. W. 851. An amendment in 1925 added the words "or at any time thereafter" in such a way as to make it clear that the property of a person receiving support or maintenance as an inmate of a state or municipal institution was liable, even though the property had been acquired subsequent to the time of receiving public support. This amendment was construed in *Estate of Pelishek,* 216 Wis. 176, 256 N. W. 700, as prospective in operation.

In 1935, sec. 46.10 (7), Stats., was created by ch. 336, Laws of 1935. This read as follows:

"46.10 (7) ˙ The actual per capita cost, as defined by rule of the state board of control, of maintenance furnished an inmate of any state institution, or any county institution in which the state is chargeable with all or a part of the inmate's maintenance, may be recovered by the state board of control, or in counties having a population of five hundred thousand or more by the county, from such person, or from his estate, or may be recovered from the husband or wife, father, children or mother of such person. In any such action or proceedings the statutes of limitation shall not be pleaded in defense. . . ."

In 1938, *Estate of Tinker,* 227 Wis. 519, 279 N. W. 83, was decided by this court. It was there held, (1) that the provision in sec. 49.10, Stats., to the effect that the statute of limitations could not be pleaded in claims arising under that section was essentially a statute of limitations; (2) that it operated prospectively, rather than retrospectively; (3) that sec. 370.06, which provides that where an act containing a limitation is repealed and the repealing act contains a new limi-

tation, the latter does not apply to rights and remedies accruing before the repealing act took effect, operates in favor of those resisting claims' of the state which arose prior to the amendment of 1941. The court thus held that as to actions accruing before the enactment in 1919 of sec. 49.10, the statute of limitations continued to run against the estate and could be pleaded in spite of the prohibition in that section.

By ch. 67, Laws of 1941, the provision in sec. 46.10, Stats., prohibiting the plea of the statute of limitations was deleted without creating any specific limitation on actions by the state.

In *Estate of Heller,* 246 Wis. 438, 17 N. W. (2d) 572, 18 N. W. (2d) 594, this court, inconsistently with the theory of the *Tinker Case, supra,* held that sec. 46.10 (7), Stats., merely created a disability to plead the statute of limitations, without in any way affecting the bar of the statute, and that the amendment in 1941 simply removed this disability with the result that the statute of limitations was running during a period when it could not be pleaded. Upon rehearing the court abandoned this view, and applied the doctrine of the *Tinker Case.* Statutes prohibiting the pleading of an applicable statute of limitations, as well as those repealing the prohibition, are thus held to be essentially statutes of limitation. The basis of both the *Tinker* and the *Heller Cases* is that in the absence of a specific provision to the contrary the assumption is that the legislature did not intend a statute of limitation to operate retrospectively. There is also a *dictum* in the *Heller Case* to the effect that it is not competent for the legislature to cut off the right of the state to sue without providing for a reasonable time in which an action may be brought. In support of this proposition the opinion cites *Osborn v. Jaines,* 17 Wis. *573. It is contended by defendant, and held by the trial court, that the *Osborn Case* is not an authority on this point since it did not involve a statute affecting the right of the state by a change in the period of limitations, and that the legislature has power to waive any of the rights or claims of the state. Assuming, with-

out deciding, that this contention is sound, it would not affect the doctrine of the *Heller* and *Tinker Cases* that such repeals or changes are prospective and not retrospective in operation. The court came to this conclusion after careful study, and after an equally careful review of the matter we have determined to adhere to it. In the *Tinker Case* the doctrine was applied in favor of those against whom the state was seeking to claim, while in the *Heller Case* it was applied in favor of the state. The trial court was of the view that *Dillon v. Linder,* 36 Wis. 344, was applicable. That case held that where a cause of action was wholly created by the statute which was repealed, it was necessary that the statute contain a saving clause expressly reserving rights of action accruing prior to the repeal. We consider that this doctrine has no application to statutes of limitation, and does not affect the presumption heretofore noted.

We are of the view that the enactment in 1941 did not cut off claims in favor of the state existing prior to that time; that in cases brought by the state under this section defendants may plead the ten-year limitation prescribed by sec. 330.18 (6), Stats., and that the statute begins to run as against all such claims, including those which had accrued prior to the enactment of the amendment in 1941, as of the date when the amendment took effect.

We now approach a point of considerable difficulty. In *State Department of Public Welfare v. Shirley,* 243 Wis. 276, 10 N. W. (2d) 215, this court held that sec. 46.10 (7), Stats., imposed no liability at all but merely authorized recovery of maintenance from relatives; that the liability of relatives was provided for in sec. 49.11; that sec. 46.10 (7) merely vests authority for collection in the state board and prescribes the manner of collection. The 1943 legislature amended sec. 46.10 (7) and added the following:

"The legislature intends, and so intended at the time this subsection was enacted by chapter 336, Laws of 1935, to impose, exclusively by this subsection and no other, a liability for

care in those institutions to which this subsection has application, upon the person receiving such care, upon his estate, and upon the relatives named herein and upon their estates. The words 'may be recovered' appearing in this subsection are and were intended to impose this liability." (Ch. 548, Laws of 1943.)

Defendant contends here, and it was the conclusion of the trial court, that if the *Shirley Case, supra,* is followed, there is a gap of eight years, that is from the enactment of sec. 46.10 (7), Stats., in 1935 until the amendment of the same section in 1943 when there is no liability on the part of the inmate or patient in a state-operated institution. This is based upon the fact that in 1935 sec. 49.10, which prior to the enactment of sec. 46.10 (7) imposed liability for institutional care upon the person maintained and upon his estate, was changed to delete this liability, while sec. 49.11, dealing with liability of relatives generally for care of indigents, was left untouched. It was stated in the *Shirley Case* in respect of the liability of relatives that the language of sec. 46.10 (7) was not appropriate to the creation of liability, but that it was procedural in character and assumed a liability already in existence under sec. 49.11.

From the legislative history previously outlined, plus the holding in the *Shirley Case, supra,* the trial court reached the conclusion that if the liability of a person or his estate for institutional care was deleted by sec. 49.10, Stats., and not restored by sec. 46.10, it had no existence until 1943 when the legislature in unmistakable terms indicated that sec. 46.10 (7) did create it. Since the *Shirley Case* was based upon the language of the act, and since this language applies with equal force to the person receiving the support and maintenance and to his relatives, we see no escape from applying the same rule in each case, and if the doctrine of the *Shirley Case* is maintained, the conclusion of the trial court that there is no liability either upon a person or his estate for institutional care from 1935 until 1943 is irrefutable.

This incongruous result has led us to re-examine the *Shirley Case, supra,* in the light of all available statutory history, and we have come to the conclusion that its construction must be overruled. It will be remembered that sec. 49.10, Stats., was a consolidation of secs. 600, 604*q,* and 1505*a.* So long as these three sections were separate, the 'distinction insisted upon in the *Shirley Case* was maintained. Thus, sec. 600 provided that district attorneys "shall, in the name of the county, *sue for and collect* from the property of any patient maintained at a state hospital or county asylum for the insane," while sec. 604*q* provided that the property and estate of any insane person, etc., *"shall be liable."* Sec. 1505*a* was also cast in terms of liability. Thus, there was recognized the very point on which the *Shirley Case* is based and which we are not in any way disposed to recede from, so far as it sets forth principles of proper draftsmanship and the ordinary and usual meaning of statutory language. However, the consolidated section, 49.10, disregarded the distinction by providing that authorities charged with the care of the poor of the municipality or the board in charge of the institution *"may sue for and collect . . . against such person and against his estate."* Thus, the predicament is even greater than that indicated by the trial court, because sec. 49.10, which has existed in substantially the same form from 1919 to 1935, has the same vice found by the *Shirley Case* in 46.10 (7). It has always been assumed and held that sec. 49.10 intended to impose liability by the words "may sue for and collect." Thus, to maintain the *Shirley Case* would require a holding that there has been no liability upon inmates or their estates for institutional care since 1919, and a view that cannot be sustained since the amendments of 1919 were merely for the purpose of consolidation and indicate no purpose to make a substantive change. The *Shirley Case* dealt with liability of relatives, and since sec. 49.11 had not been changed by the amendment of 1935 and appeared sufficient to carry the liability, and since the language of the section is commonly as-

sociated with procedural directions rather than casting of liability, it appeared to us that a case was made for the construction which we adopted.

In *Guardianship of Brennan,* 245 Wis. 235, 14 N. W. (2d) 28, having to do with a judgment of the county court of Milwaukee county allowing a claim against the estate of an insane person for her maintenance in the Milwaukee county hospital for the chronic insane, the dilemma here discussed was called to the attention of the court, and it was there said that sec. 49.145, Stats. 1935, imposes a liability on the inmate of an institution for the care of the insane which sec. 46.10 (7) implements. A careful re-examination of this conclusion leads us to hold that it cannot be sustained. Sec. 49.145 was enacted by ch..228, Laws of 1923, and contained two subsections. The first provided, in substance, that every county may establish a county hospital for the treatment of, (a) indigent persons, (b) persons having a legal settlement therein afflicted with any disease, malady, deformity, or ailment which probably can be remedied, or advantageously treated by proper mental or dental or surgical care, in cases where such person or his parent or guardian is financially unable to provide this care and treatment. Sub. (2), quoted in the *Brennan Case,* provides that persons who are not indigent shall be received for treatment subject to such conditions and at such rates not exceeding the actual cost to the county as shall be determined by the governing authority of said hospital.

This section does not fill the gap for the following reasons: (1) It does not apply to county insane asylums; it was enacted in 1923 to authorize county hospitals for general medical, surgical, and dental treatment, and the authorization of counties to maintain insane asylums antedated its enactment by many years; (2) it does not impose liability for care in a state institution of any sort; (3) sub. (2) merely gives power to the governing authority of such hospitals to fix rates, and assumes, rather than imposes, a liability on the part of patients who are not indigent at the time of being received for treatment; (4) it

does not cover persons who are indigent when received for treatment, but who later become financially able to pay for their care.

It is our conclusion that sec. 49.145, Stats. (which was repealed by sec. 6, ch. 585, Laws of 1945, and the substance of the section put into secs. 49.16 and 49.17), cannot be resorted to as a source of liability of the inmates of county and state institutions for the treatment of mental cases or of their estates. While the phrasing of secs. 49.10 and 46.10 (7) is inappropriate to establish liability, it is not so disassociated with the subject that in connection with the whole statutory history it may not evidence a legislative intent to impose liability in this instance. Prior to the *Shirley Case, supra,* we had held in *Guardianship of Henes,* 236 Wis. 635, 637, 296 N. W. 60, that sec. 46.10 (7) does create "an absolute obligation upon the part of the ward to pay for his care and maintenance." We had assumed this in *Estate of Sletto,* 224 Wis. 178, 272 N. W. 42. In *Estate of Hahto,* 236 Wis. 65, 294 N. W. 500, expressly repudiated by the *Shirley Case, supra,* the section was treated as creating a liability against an inmate and his estate for care and support. We conclude that it was the legislative purpose in 1935 to remove from ch. 49, Stats., all liability for institutional care and to impose this liability by ch. 46. This purpose was somewhat obscured by the fact that sec. 49.10 was changed to delete provisions for institutional care, while sec. 49.11, dealing with the liability of relatives, was left unchanged. The reason for this evidently was that sec. 49.10 contained a specific reference to institutional care, while sec. 49.11 was cast in general terms and made no such reference.

Two other factors may briefly be mentioned. It has always been regarded as a strong answer to a contention that we should change a construction of a statute that subsequent sessions of the legislature had come and gone without any attempt to amend it. This has been regarded as an indication of legislative concurrence with our interpretation. In this case, however, we have an especially pointed repudiation of the *Shirley*

*Case, supra,* at the first legislative session where the matter could be considered, and in addition to making the meaning of sec. 46.10 (7) unmistakably clear, the legislature went on to state that it had always been the purpose of the section to impose liability. While the 1943 legislature cannot usurp the function of this court and authoritatively construe a statute enacted by a previous legislature, its immediate and forceful repudiation of a decision is entitled to at least as much weight as has always been given the failure of the legislature to act at all.

Finally, we are bound to view with concern a construction of sec. 49.10, Stats., which eliminates all liability of inmates at state institutions back to 1919, especially when by this construction both secs. 49.10 and 46.10 (7) assume a liability by making provisions for its recovery.

For the foregoing reasons, so much of the *Shirley Case, supra,* and the *Brennan Case, supra,* as are inconsistent herewith, must be overruled, and the decision in *Estate of Hahto, supra,* reinstated. This does not affect the correctness of the result in the *Shirley Case* for the reason that there the action was based upon a common-law liability which clearly did not exist. The *Brennan Case* was correctly decided upon the basis here adopted. It follows that the inmate and his estate were liable for care and maintenance under secs. 49.10 and 46.10 (7), Stats., successively, and that the state is entitled, so far as the defense of the statute of limitations is concerned, to recovery upon its whole claim.

In closing this opinion, we acknowledge the great help given the court by the able and exhaustive statutory research of the trial court.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff in accordance with this opinion.

BARLOW, J., took no part.