GUARDIANSHIP OF DACH: STATE DEPARTMENT OF PUBLIC WELFARE, Respondent, vs. SCHIPPER, Guardian, Appellant.

*January 12—February 7, 1956.*

For the appellant there was a brief and oral argument by *Lorin L. Kay* of Richland Center.

For the respondent there was a brief by *Frank P. Fosgate,* collection and deportation counsel, and *Charles C. Lubcke* and *Clarence Simon,* assistant counsel, and oral argument by *Mr. Simon.*

BROADFOOT, J.    Many objections are advanced to support the contention that the order is invalid. These arguments may be summarized as follows:

The governing statutes are secs. 51.22 and 46.10; that sec. 46.10 is in derogation of the common law and is to be strictly construed; that Dorothy Belle Dach was committed as an epileptic; that epilepsy is neither insanity nor mental illness; that sec. 46.10 describes neither the ward, the care and maintenance, nor the Southern Colony; that a commitment for epilepsy is involuntary and an involuntary commitment, except for insanity, carries with it no liability for care and maintenance; that a prior claim filed in 1940 was not pursued by the department; and finally, that the claim dates back to 1934 and is therefore barred by the statute of limitations.

We agree with the contentions as to what are the governing statutes and that sec. 46.10 is in derogation of the common law and is to be strictly construed. Most of the arguments advanced by the guardian are based upon his contention that Dorothy Belle Dach was committed as an epileptic. That contention is vigorously denied by the department. Assuming, without deciding, that the issue is important in the determination of the case, we have carefully examined the record of the proceedings leading to the commitment.

The application was made upon a blank furnished by the State Board of Control, the predecessor of the State Department of Public Welfare. The following instruction appeared in the blank: "Petitioners should state the facts observed by them or the information known to them which would tend to show the existence of mental deficiency or epileptic condition." The answer thereto was as follows: "Patient frequently has seven or eight epileptic attacks a day." In the appointment of the physicians they were directed to examine Dorothy Belle Dach "who is allegedly mentally deficient or epileptic and by such examination and inquiry to satisfy yourselves fully as to the mental condition of the said Dorothy Belle Dach." In the report of the examining physicians they stated that no mental tests had been applied.

From the statement in the petition and that statement in the report of the examining physicians, the guardian draws the conclusion that the person examined was only found to be epileptic. In other answers the physicians stated that mental abnormality was first noticed when the person examined was two years old. In answer to a question as to in what manner such mental abnormality has become manifest and whether by way of mental disorder or mental deficiency they answered "Mental deficiency and epileptic attacks." The following direct questions were asked in the blank of the physicians: "Is this person mentally deficient?" and "Is this person epileptic?" The answer to each question was "Yes." The adjudication and order of commitment read as follows:

"Now therefore it is ordered, that the said Dorothy Belle Dach be and hereby is adjudged mentally deficient or epileptic and that she be committed to the Southern Wisconsin Colony and Training School at Union Grove, Wisconsin.

"Now therefore, you the said Raymond Jacobson are hereby ordered and directed to receive and convey the said Dorothy Belle Dach to the Southern Wisconsin Colony and Training School at Union Grove, Wisconsin; and to deliver the said Dorothy Belle Dach to the superintendent thereof,

and you the said superintendent are hereby ordered and directed to receive the said Dorothy Belle Dach as a patient or inmate of Union Grove Wisconsin Colony and Training School and there keep she [sic] until such patient is lawfully discharged therefrom."

From the above it appears that Dorothy Belle Dach was found to be both mentally deficient and an epileptic. Therefore the argument that an involuntary commitment for epilepsy carries with it no liability for care and maintenance falls. The main question to be determined is whether there is liability under the provisions of sec. 46.10, Stats. The pertinent portions of that statute now read:

"(2) Any patient in any charitable or curative institution of the state . . . , in which the state is chargeable with all or a part of the patient's maintenance . . . shall be liable for such patient's maintenance not exceeding the actual per capita cost thereof, except as provided in sec. 51.22 (2m). . . ."

The contention is made that Dorothy Belle Dach is not a patient in, nor is the Southern Wisconsin Colony and Training School to which she was committed, a charitable or curative institution of the state. Prior to 1947 commitments to the Southern Wisconsin Colony and Training School were under ch. 52, Stats., which was entitled "Homes for the Feeble-Minded." By joint resolution the 1945 legislature provided for the appointment of an interim committee to study and codify the Public Welfare Laws. In 1947 legislation was enacted upon the recommendation of this committee that consolidated ch. 52 with ch. 51 of the statutes. Prior to that time ch. 51, Stats., was entitled "Hospitals and Asylums for the Insane." Since that time ch. 51, Stats., has been entitled "State Mental Health Act." In various places in the statutes terminology was changed in an effort to eliminate the stigma often associated with mental cases. One reason was to distinguish the procedure, as far as possible,

from the procedure in criminal cases to avoid any inference that mentally ill persons are criminals. Examples of the changes in terminology are that in the new statutes the term "mentally ill" is used instead of "insane;" "mentally infirm" is used instead of "senile;" and "mentally deficient" is used instead of "feeble-minded," "idiotic," or "imbecile." Reference to "inmates" of state institutions was eliminated and the word "patient" was substituted. In the order of commitment the superintendent of the institution was directed to receive the said Dorothy Belle Dach "as a patient or inmate." The words "inmate" and "patient" are used interchangeably in 41 C. J. S., Hospitals, p. 338, sec. 7. Thus the change in the statute is a mere change in terminology and does not change the meaning thereof, and an inmate of the Southern Wisconsin Colony and Training School is a patient therein under the language of sec. 46.10, Stats.

The guardian contends that a charitable institution means one for the care of the needy by the giving of alms or shelter, and that to extend the terms "charitable" and "curative" to an institution designed for the custody of hopeless and incurable epileptics requires a strain which cannot be permitted. This contention is based in part upon the contention that the patient was committed solely as an epileptic. Charities embrace all public and private institutions organized not only to relieve the poor and destitute but also other unfortunates, including those with physical or mental disabilities. It has been said that a charitable institution means a public institution partaking of some of the duties of government. *Samuelson v. Horn,* 221 Iowa, 208, 265 N. W. 168.

We have no hesitancy in saying that the Southern Wisconsin Colony and Training School is a charitable institution of the state. We believe also that it is a curative institution within the contemplation of the statute. The word "curative" therein refers to the type of institution and not to the patient. The amount to be charged at that institution

is limited by the provisions of sec. 51.22 (2m), Stats., and reference to that section in sec. 46.10 clearly shows that patients in that institution come within the provisions of sec. 46.10. We certainly cannot take judicial notice of the fact that epileptics are hopeless and incurable. There was no attempt to offer proof thereof in the record. The liability under sec. 46.10 has been defined in *Estate of Cameron,* 249 Wis. 531, 25 N. W. (2d) 504, and *Derouin v. State Department of Public Welfare,* 262 Wis. 559, 55 N. W. (2d) 871. Cases cited by the guardian having to do with confinement in a penal institution or in connection with criminal charges brought are not applicable.

A prior claim was filed in 1940 and that claim dated back to 1934. At the time it was filed a guardian for the patient had a few dollars in his custody and a portion thereof was paid upon the claim. It was not until Mr. Dach died and the patient inherited some funds that there was anything to which the department could look for payment. The final claim goes back about ten years prior to the date of filing and within the ten-year period it was not barred by the statute of limitations.

*By the Court.*—Order affirmed.