RUSSELL FALKENBERG, District Attorney, Chippewa County
You have inquired regarding changes brought about by recent legislation in the area of fixing and collecting fees for certain mental health care services.
Effective January 1, 1974, sec. 51.36, Stats. (community mental health clinic services) and sec. 51.38 (community care services for the mentally handicapped) were repealed, and with them the provisions for establishing patient fee schedules for services provided under those sections. In addition, the power of any board established under sec. 51.42, Stats., to fix fee schedules was removed by ch. 90, Laws of 1973, effective August 5, 1973.
However, the enactment of ch. 90 also created sec. 46.03 (18), Stats., which required the Department of Health and Social Services to establish a uniform system of fees for services provided or purchased by the department and by boards created under secs. 51.42 and 51.437, which were known as the community mental health, mental retardation, alcoholism and drug abuse governing and policy making board, and the community developmental disabilities service board, respectively. Section46.03 (18), Stats., provides that the department shall: *Page 561 
 "(18) UNIFORM FEE SCHEDULE. Establish a uniform system of fees to be paid by the person, family, or legally responsible relative or guardian of the child or individual receiving services provided or purchased by the department, a county department of public welfare, or a board under sec. 51.42 or 51.437, except for services provided to courts, or for outreach information and referral services, or where as determined by the department, a fee is administratively unfeasible or would significantly prevent accomplishing the purpose of the service."
In light of these changes, you ask, first, whether the present law allows or requires boards established under secs. 51.42 and51.437 to "charge back" and collect for services provided; and second, if such authority exists, whether there are any guidelines or criteria for collection of these fees.
Since your initial inquiry, the enactment of additional legislation affecting policies in this area has further complicated the situation. For this reason, your questions will be treated together in the interest of providing a concise and cogent answer.
Prior to the enactment of ch. 90, Laws of 1973, the responsibility for collection of the cost of services provided under ch. 51, Stats., was governed principally by sec. 46.10, Stats. Briefly stated, this section imposed liability for the cost of maintenance upon both patients and outpatients, as well as certain relatives of such patients, for care and maintenance provided in state and county charitable and curative institutions when the state was chargeable with all or a part of the patient's maintenance. This section also provided a method of making settlements between the state and the counties of the monies collected and provided a formula for the distribution of such funds.
Although ch. 90 completely revised the provisions formerly found in sec. 46.10 (8) (f), Stats., relating to the distributions of monies collected under that section, it is significant that the portions of sec. 46.10 dealing with liability and the enforcement thereof were not altered. The changes effected by the repeal of sec. 46.10 (8) (f) and the enactment of sec. 46.10 (8) (g) clearly contemplated that in the future sec. 46.10 would be enforced in its entirety. *Page 562 
Section 46.10 (8) (g) as created by ch. 90 provided for distribution by the Department of Health and Social Services of collections made "under this section," and for distribution by the department of collections for care furnished during the calendar year 1974 and after January 1, 1975. It specifically required that for care furnished after January 1, 1975, all monies collected shall be retained by the state.
This distribution formula was consistent with historical practices under which there always has been some relation between charges assessed against the state and the counties and the collections distributed to the state and the counties. Section 541j (2) of ch. 90, and sec. 51.42 (8) (c), as amended by sec. 295 of ch. 90, provided for 100 percent payment by the state for care provided under ch. 51, Stats., after January 1, 1975. It is my opinion that this constituted a charge to the state within the meaning of sec. 46.10 (2). Section 541j of ch. 90 relating to state assumption of county share of costs for certain related services also provided a charge to the state.
The changes in sec. 46.10 clearly contemplated that collections for care provided in state and county hospitals as defined in ch. 51, Stats., should be governed by this section after January 1, 1974. Section 46.10 (7) provides that "The department shall
administer and enforce this section." The duties imposed upon the department by sec. 46.10 are therefore mandatory rather than optional. While this opinion does not rely upon sec. 553m of ch. 90 for the conclusions reached herein, there is some language in that section which could reasonably be construed as indicating an intention on the part of the legislature to adopt a policy of completely separating the delivery of services from the functions of collection and enforcement, and the centralization of the latter functions. See, for example, subsec. 553m (2) (d) 1.
Chapter 90 also made some changes in various provisions of ch. 51, Stats., which directly or indirectly affect the collection function. Patients from counties which had not yet established a comprehensive program under sec. 51.42, who had been properly admitted to state or county mental hospitals before or after August 5, 1973, were liable for their care by sec. 46.10. It remained the duty of the department to enforce such liability for care provided both before and after January 1, 1974. Section46.10 has not been repealed and *Page 563 
continues to provide both for the liability for the care of patients and the enforcement of such liability in all cases where it applies.
Prior to the enactment of ch. 90, sec. 51.42 (11), Stats., specifically provided for liability for services provided under the sec. 51.42 program, including a specific incorporation by reference in sec. 51.42 (11) (a) of the liability imposed by sec.46.10 for care provided in institutions specified in sec. 46.10. Section 51.42 (11) (b) extended the liability created by sec.46.10 to the care furnished patients in general hospitals by51.42 boards and authorized that boards may refer such accounts to the department for collection. Section 51.42 (11) (c) created liability for all other services and authorized, but did not require, the 51.42 board to enforce that liability.
Chapter 90 repealed all of sec. 51.42 (11), as well as sec.51.42 (10), which dealt with segregation of the costs of services provided by institutions mentioned in sec. 46.10. Nevertheless, since ch. 90 authorized a charge to the state for the cost of patient care in state and county hospitals, the conditions for liability under sec. 46.10 still existed. As to those hospitals sec. 46.10 remained in force, and it was the duty of the department to enforce such liability.
With respect to services provided under sec. 51.42 in general hospitals and to all other services supplied by sec. 51.42
boards, the problem was more difficult. Former sec. 51.42 (11)(b) and (c) actually created the liability for such services. Section46.10 did not apply because the services were not provided as inpatient or outpatient care in a state or county institution.
I can find nothing in ch. 90 that either directly or by implication preserved the liability formerly imposed by the repealed portion of sec. 51.42 (11). The general rule is that relatives have no liability for the cost of care furnished to a person by the state or municipalities unless there is a statute creating such liability, since under common law, states and municipalities were not charged with the duty of supporting poor, insane or incompetent persons. For a full discussion on this point, see State Department of Public Welfare v. Shirley (1943),243 Wis. 276, 10 N.W.2d 215. It also has been held that a husband's common-law liability to support his wife does not extend to support provided outside the home unless extended by statute. Richardson v. Stuesser (1905), 125 Wis. 66, 71-72,103 N.W. 261. *Page 564 
Neither can reliance be placed upon the provisions of ch. 52, Stats., dealing generally with support of dependents. The court has held this chapter to apply only after a judicial determination and not as a result of the type of situation with which we are now dealing. Ponath v. Heidrick (1964), 22 Wis.2d 382,390, 126 N.W.2d 28; Saxville v. Bartlett (1906), 126 Wis. 655,105 N.W. 1052.
[As I have pointed out earlier, it has been held that there is no common-law liability on relatives for care provided in mental institutions, and that any attempt to recover from relatives for such services must be specifically authorized by statute.] It is my opinion that indirect reference to charges and receipts in sections not dealing with liability and collections are insufficient to create a liability in derogation of the common law. It follows that for services other than those mentioned in sec. 46.10, there was no enforceable liability to anyone other than the patient himself. There is, of course, always liability on the part of the person receiving the care or services since such liability existed at common law. Guardianship of Sykora
(1956), 271 Wis. 455, 458, 74 N.W.2d 164.
Based upon the foregoing considerations, my conclusions relative to your concerns before June 29, 1974, are as follows:
1. For inpatient care and maintenance in all state and county mental hospitals, liability and the enforcement of such liability was governed exclusively by sec. 46.10, Stats., and it was the duty of the department to enforce such liability. This duty was made mandatory by sec. 46.10 (7).
2. For outpatient services provided in state hospitals or county hospitals which have established programs under sec.51.42, liability and the enforcement of such liability was governed by sec. 46.10, and there was also a mandatory duty upon the department to enforce such liability.
3. For services other than care in state and county mental hospitals, it appears that there was no statute creating liability or identifying those liable for such care. While authority was granted in sec. 46.03 (18), Stats., to fix schedules of fees to be paid by the individual receiving the services and certain others, those other than the patient or his guardian who might be liable were not identified, and there was no language creating a liability. Section 46.036 (4) *Page 565 
(a) required facilities and agencies contracting for services to charge the schedule of fees established by the department but those who were to be charged were not identified, and again there was no language creating any liability. This applies also to services provided under sec. 51.437, Stats.
4. Given the state of the statutory language, there appeared to be no specific collection duties, either mandatory or optional, assigned to counties or providers of services.
Since your request was received, the provisions relating to boards established under secs. 51.42 and 51.437 have been changed drastically by the enactment of ch. 333, Laws of 1973, effective June 29, 1974. Almost all of your questions, as they pertain to problems arising on or after June 29, 1974, are answered by these amendments which are contained in secs. 87 through 95 and secs. 115 through 126. These amendments cover subjects not previously anticipated such as relative responsibility for services provided, reimbursement to the counties and the boards mentioned above, avoidance of duplication of services and other relevant topics. No purpose would be served in repeating the terms and conditions of this new legislation as it speaks directly to your inquiry but only for care and services provided on or after June 29, 1974.
Both before and after June 29, 1974, 51.42 and 51.437 boards were eligible for grants in aid under secs. 51.42 (8) and 51.437
(8). However, some changes in these subsections were made within ch. 333.
You express several concerns which pertain to these programs both before and after the enactment of ch. 333.
You point out that the department has not established a new uniform system of fees but rather has adopted existing fee schedules. I find nothing irregular about this practice; it is one in which state agencies engage often. Moreover, the department has indicated that it will study this problem as the programs develop.
I do not share your concern that administrative second-guessing will be the product of the latitude given the department in determining when a fee is administratively unfeasible or when it would significantly prevent accomplishing the purpose of the service. Although subject to attack on the grounds that they might allow *Page 566 
abuse of departmental discretion, many laws must be drafted in this manner to give maximum opportunity for effective implementation of the legislative purpose.
You contend that sec. 46.03 (18) lacks a proper standard or guideline. In this regard, it is important to distinguish between a uniform system of fees as required under sec. 46.03 (18) and a uniform schedule of fees which you infer would be more desirable. Apparently because of geographical differences in costs and other administrative considerations the legislature deemed it desirable to require only a uniform system of fees rather than a uniform statewide schedule of fees, which was within its power to enact.
As amended by sec. 87 of ch. 333, sec. 46.03 (18) answers your questions concerning 1) the ability to pay, 2) the tribunal of determination and enforcement, and 3) what services required so-called "charge backs." The primary responsibility for making such determinations rests with the Department of Health and Social Services; but the department may delegate to county departments of public welfare and providers of care and services such powers and duties as it deems necessary. The problem of overlap or duplication of services is covered by secs. 51.42 (8) (b) and51.437 (8) (b), Stats.
Section 46.10, Stats., now provides that any patient receiving care under secs. 51.42 and 51.437 and his responsible relatives shall be liable for the cost of care in accordance with the fee schedule established by the department, and that the department may bring action for enforcement of such liability. This reference to the enforcement of liability and specific reference to the estates of the patient and his responsible relatives indicate that any claim can be reduced to judgment and filed as a death claim against the estate of the responsible party.
Such actions were, of course, barred prior to the enactment of ch. 333, in view of the lack of a provision vesting relatives with the responsibility to meet the costs of care and maintenance other than that provided under sec. 46.10.
Your question regarding the assignment of insurance benefits requires that we distinguish between what is commonly known as hospitalization insurance and other types of coverage. In dealing *Page 567 
with hospitalization insurance, it is logical to assume that the county is entitled to reimbursement for any services covered by the policy. This would be true of care provided in any public or private facility, notwithstanding the admission of the patient under the special programs established by secs. 51.42 and 51.437. The assignment of benefits from other kinds of insurance such as life insurance could not be effected in the absence of a specific statute authorizing such action. It is my opinion that, absent such a statute, such assignment could be accomplished only by a voluntary agreement between the patient and the board providing services. It should be stressed, however, that such voluntary assignment in no way can be used as a condition for entry into one of those programs.
Last, I refer to your inquiry into possible third party liability. The standards of tort liability logically would apply to any liability incurred by a provider of services. If your question concerns third party liability in the sense of the financial responsibility of relatives for patient care, please refer to the above discussion.
VAM:DPJ