IN the MATTER OF the GUARDIANSHIP OF Richard KORDECKI, a minor: KENOSHA COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant-Petitioner,

v.

KENOSHA NATIONAL BANK, guardian for Richard Kordecki; Lawrence Kordecki; and Linda Kordecki, Respondents.

Supreme Court

*No. 77–447. Argued March 4, 1980.—Decided April 1, 1980.*

· (Also reported in 290 N.W.2d 693.)

276

For the appellant-petitioner there was a brief and oral argument by *Frank Volpintesta,* corporation counsel.

For the respondents there was a brief and oral argument by *Thomas G. Hetzel* of Kenosha.

SHIRLEY S. ABRAHAMSON, J. This is a review of a decision of the court of appeals, *In the Matter of Guardianship of Kordecki,* 85 Wis.2d 420, 270 N.W.2d 421 (Ct. App. 1978), which affirmed an order of the county court denying the claim of the Kenosha County

Department of Social Services (county department) against the guardianship account of Richard Kordecki. We reverse the decision of the court of appeals and the order of the county court.

In 1965, the Kenosha National Bank was appointed as guardian of the estate of Richard Kordecki, a minor, to care for and manage the sum of $3,325.25, which Richard had received as the net proceeds of a settlement of a claim for personal injuries sustained by him. The letters of guardianship stated, in part, that the guardian was authorized and empowered to care for and manage Richard's estate until he reached the age of twenty-one and that the guardian was required "to dispose of and manage all such estates according to law and for the best interest of the ward."

Linda Kordecki, Richard's mother, applied for public assistance in the form of AFDC and medical assistance for herself, for Richard and for her other children and began receiving such assistance in March, 1970. The amount of the assistance was to some extent dependent on the number of children in the family. Linda Kordecki did not advise the county department of the existence of the guardianship account.

In January, 1975, after learning of the existence of the guardianship account from a sample survey by the state Department of Health and Social Services, the county department took steps to reduce the grant to the mother by removing Richard from the mother's grant on the ground that Richard's guardianship account exceeded the $1,500 liquid asset limitation for eligibility for AFDC. This determination was upheld by the state Department of Health and Social Services after a contested hearing, and Richard was removed from the mother's grant on November 1, 1975. Thereafter, the guardian paid to Linda Kordecki a monthly allotment from the guardianship account for necessities for Rich-

ard. Other expenses paid from the guardianship account included money for gifts, bicycle repairs, school supplies, vacation expenses and driving lessons. All of these expenditures have been approved by the county court.

In January, 1976, the county department filed a claim in the Kenosha county court against the guardianship account for the sum of $3,482.70 (later reduced to $2,-672.67), seeking reimbursement of the amount of the public assistance grant paid to Linda Kordecki that the county department computed as allocable to Richard. Richard's father objected to the allowance of the claim. The guardian also objected to the allowance of the claim stating that it had insufficient information regarding the claim, and the guardian petitioned the county court for directions as to the disposition of the claim.

After a hearing the county court issued an order denying the county department's claim, setting forth the following reasons:

1. Richard's mother was the recipient of the grant, not Richard, the ward of the guardianship;

2. The guardianship funds were not available for current use on a regular basis;

3. "[T]o subject the property of the ward to this claim, or the assistance grant which underlies the claim, would in the court's opinion impinge on Richard Kordecki's due process rights under the 14th Amendment of the Constitution of the United States;" and

4. "[N]o statutory authority has been presented to the Court to sustain the claim. Section 49.195, Wis. Stats., permits recovery of any aid or assistance from any *parent* who received such aid. In the instant case, no effort is being made to enforce collection against a *parent* who received aid. (Emphasis added.) Rather, the Department is attempting to enforce collection against a minor who never applied for aid, and never directly received any aid from the Department, and who made no representations to obtain the aid. The legislature, not

having seen fit to grant authority to the Court under these circumstances, the Court has no authority to allow this claim."

We agree with the county court and the court of appeals that there is no statutory authority to support the county department's claim. The pertinent statute providing a procedure of recovery of aid is sec. 49.195, Stats., which reads as follows:

"(1) If any parent at the time of receiving aid under s. 49.19 or at any time thereafter acquires property by gift, inheritance, sale of assets, court judgment or settlement of any damage claim, the county granting such aid may sue said parent to recover the value of that portion of the aid which does not exceed the amount of the property so acquired. . . ."

Sec. 49.195, Stats., imposes liability on the parent, not on the child. Accordingly, as we explained in *In re Estate of Bundy*, 81 Wis.2d 32, 36, 259 N.W.2d 701 (1977), the county department cannot rely on sec. 49.195, Stats., as authority to recover because the action was not brought against the person who is made liable for recovery under the statute. The recovery procedure under sec. 49.195 is governed wholly by statute and the statute must be followed. The statute does not cover the situation presented in the instant case.

Nevertheless, we conclude that the county court and court of appeals erred in failing to consider whether, in the circumstances of this case, the county department had a common law right of recovery against the guardianship account.

■

This court has said that as a general rule the county cannot recover for relief furnished to a poor person in the absence of a statute because the relief furnished is regarded as a charity. *State Dept. of Public Welfare v. Shirley*, 243 Wis. 276, 291, 10 N.W.2d 215 (1943); *Estate of Peterson*, 66 Wis.2d 535, 542, 225 N.W.2d 644

(1975). This statement of the law is consistent with the general rule of implied-in-fact contracts, namely that a promise to pay will not be implied if a benefit is conferred with no expectation of payment but is conferred from motives of friendliness, neighborliness, kindliness or charity. *Estate of Detjen,* 34 Wis.2d 46, 53, 148 N.W.2d 745 (1967). However in *Estate of Peterson,* 66 Wis.2d at 542–543, this court also said that the county may have a common-law right of recovery for relief paid if it meets "at least two requirements": "The first . . . is that the persons . . . sought to be held liable must have had a common-law liability for the support of the ultimate recipient of the aid. The second requirement is that the aid (by the county) must not have been given gratuitously, *i.e.,* under circumstances which do not raise an implied promise of repayment." This statement of the law is consistent with the general rule of implied-in-law contracts (quasi-contracts), namely that the law will impose an obligation to pay on the person receiving a benefit when to retain the benefit would be unjust. *Arjay Inv. Co. v. Kohlmetz,* 9 Wis.2d 535, 538–539, 101 N.W.2d 700 (1960).

The county department argues that the two criteria set forth in *Peterson* are met in the present case. The first of the criteria is met, asserts the county department, because the "person . . . sought to be held liable" is the Kenosha National Bank, guardian of the estate of Richard Kordecki, and the guardianship estate is liable for the support of Richard.

The liability of the guardianship estate is set forth in sec. 880.21(1), Stats. 1975, which provided that "[e]very guardian shall apply the personal property or the income therefrom . . . as far as may be necessary for the suitable education, maintenance and support of the ward . . . ." Sec. 880.21(2), Stats. 1975, further provided:

"(2) FOR SUPPLEMENTING PARENT'S SUPPORT OF MINOR. If any minor has property which is sufficient for his

maintenance and education in a manner more expensive than his parents can reasonably afford, regard being had to the situation and circumstances of the family the expenses of his education and maintenance may be defrayed out of his property in whole or in part, as shall be judged reasonable and be directed by the county court."

Thus the guardianship account apparently might have been available for the education, maintenance and support of Richard Kordecki when the county department began providing aid to Richard's mother in March 1970 if the county court had so ordered. The county court recognized liability of the gardianship estate for Richard's support when, after the county department removed Richard from the grant in November 1975, the county court authorized use of guardianship funds for Richard's support. This payment of funds seems to contradict the county court's conclusion that "the guardianship funds were not available for current use on a regular basis." It is for the county court, not for this court, to determine initially whether payments would have been authorized for Richard's support from 1970–1975 under the circumstances then existing. The county court must further determine whether Richard was, in fact, "the ultimate recipient of the aid." The "excess funds" were paid to Richard's mother—she was the immediate recipient of the aid. The record does not show the extent to which the mother expended the "excess funds" for Richard's benefit so that he could be called "the ultimate recipient of the aid." The county department's right to recover is dependent on its proving that Richard was an ultimate recipient of aid (and the extent to which he received such aid), and that the guardianship funds were benefited thereby because the estate was relieved of a liability which it would have otherwise incurred.

The county department asserts that the second criterion set forth in *Peterson* has also been met, namely that the aid was not given gratuitously, that is, it was

given under circumstances which raise an implied promise of repayment.

The aid here was given to Richard's mother as relief, as charity. More aid was given than would have been because of the misrepresentations made by Richard's mother.

Under the circumstances of this case, the Kenosha county court must determine whether the "excess aid" was not gratuitous. The general rules of quasi-contract, unjust enrichment and restitution are that when one person is unjustly enriched at the expense of another, the law implies a promise to repay. A person who confers a benefit upon another because of a mistake, whether or not the mistake was induced by fraud or misrepresentation, is generally entitled to restitution if the mistake caused the conferring of the benefit. Secs. 9, 26, Restatement of Restitution (1937). When a payor confers a benefit on someone because of the fraud or mistake caused by another, the payor is generally entitled to restitution from the person benefited just as if the payment had been made directly to the person causing the fraud or mistake. *Cf.* secs. 17, 19, 20, Restatement of Restitution (1937). A person who has conferred a benefit on a trust estate can apply for payment from the estate to the extent to which the estate has been benefited unless under the circumstances it is inequitable to allow a remedy. *Cf.* sec. 269, Restatement (Second) of Trusts (1957). There are, of course, defenses which the guardian may assert. See, *e.g.* Ch. 8, Restatement of Restitution (1937).

We conclude that the Kenosha county court erred in deciding that it had no authority to allow the claim. While there is no statutory authority for allowing the county department's claim, there is common-law au-

thority. We hold that the county court should decide the validity of the county department's common-law claim against the guardianship estate.

For the reasons stated, we reverse both the decision of the court of appeals and the order of the county court and remand the cause for further proceedings not inconsistent with this opinion.

*By the Court.*—Decision of the court of appeals is reversed; order of the county court is reversed and the cause is remanded.