ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Andrew W. Swain
Chief Counsel

Jennifer E. Gauger
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Phillip R. Scaletta
Mark J. Richards
Edward P. Steegmann
Brian J. Paul
Indianapolis, Indiana



FILED

May 12 2011, 8:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 36S01-1009-CV-469

STATE EX REL. GREGORY F. ZOELLER,
ATTORNEY GENERAL OF INDIANA

*Appellant (Plaintiff below)*,

v.

AISIN USA MANUFACTURING, INC.,

*Appellee (Defendant below)*.

Appeal from the Jackson Superior Court, No. 36D01-0905-MI-8
The Honorable Bruce Markel, III, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 36A01-0909-CV-442

**May 12, 2011**

**Sullivan, Justice.**

The Attorney General sought to recover an erroneously issued "tax refund" of approximately $1,150,000 from Aisin USA Manufacturing, Inc. ("Aisin") in Jackson Superior Court. Aisin argued that the case "arises under" Indiana tax law so that exclusive subject matter juris-

diction rests with the Indiana Tax Court. We hold that this case may proceed in Jackson Superior Court. It does not arise under the tax laws because the "refund" was the result of accounting and clerical errors within the Indiana Department of Revenue ("Department") that were wholly unrelated to any interpretation or application of tax law.

## Background

The factual issues in this case are unique and complex. But because this is an appeal from a trial court's grant of a pretrial motion to dismiss under Trial Rule 12(B)(1), we accept as true the facts alleged in the State's complaint. Title Servs., LLC v. Womacks, 848 N.E.2d 1151, 1153 n.1 (Ind. Ct. App. 2006) (citation omitted); see also GKN Co. v. Magness, 744 N.E.2d 397, 400-01 (Ind. 2001) (setting out the standard of review).

Aisin filed its Indiana corporate income tax return for tax-year 2000 in October, 2001, reporting its total tax due as $2,121,242 and its total payments as $2,083,241.[1] Appellant's App. 4, 28, 195. Because it had underpaid its taxes by $38,001, Aisin remitted payment of $39,331, which included interest. Id. In October, 2002, Aisin filed its tax return for tax-year 2001, reporting its total tax due as $1,300,637 and its total payments as $1,457,000.[2] Id. at 6-7, 70. Because it had overpaid its 2001 taxes, Aisin was entitled to a refund of $156,363, which it requested be applied toward its 2002 taxes. Id. at 7, 70. Even though Aisin was neither entitled to nor expecting to receive a refund check for its 2001 taxes, it received a check for $1,146,062 in September, 2003, which it negotiated. Id. at 7-8, 26, 189.

The Department issued the check because of several accounting and clerical errors that had occurred while entering data from paper records into the computerized Revenue Processing System ("RPS"). Id. at 7, 9. There appear to have been three major errors: First, the Depart-

---

[1] The payments derived from six sources: four quarterly tax payments of (1) $360,000; (2) $507,312; (3) $487,000; and (4) $384,436; (5) a carry-forward credit of $44,493 for overpaying its 1999 taxes; and (6) an extension payment of $300,000 paid to extend its filing deadline from April to October. Appellant's App. 28.

[2] The payments derived from five sources: four quarterly tax payments of (1) $300,000; (2) $300,000; (3) $300,000; and (4) $200,000; and (5) an extension payment of $357,000. Id. at 70.

ment had given Aisin an erroneous credit of $967,335[3] for an overpayment of its 2000 taxes. Id. at 4-5, 196. Second, a billing clerk in Audit Review had made a number of errors entering information from Aisin's paper return for 2001 into the RPS, which resulted in the RPS miscalculating Aisin's 2001 tax as $540,584 (minus a $1,000 college-contribution credit), instead of its actual tax due ($1,301,637 (minus a $1,000 college-contribution credit)). Id. at 7, 191. Third, the Department had failed to give Aisin credit for $657,000 worth of payments made toward its 2001 taxes.[4] Id. at 6, 192-93. The combined effect of these three errors was a miscalculation that Aisin had overpaid its 2001 taxes by $1,227,750. Id. at 7-8, 188. The Department applied $156,363 of this total toward Aisin's 2002 tax liability, as requested, which resulted in a refund amount of $1,071,387 plus interest, for a total of $1,146,062. Id. at 7-8, 188-89.

In October, 2005, Aisin filed an amended return for the 2001 tax year, reporting its total tax due as $1,052,369 and its total payments as $1,457,000 (plus a $1,000 college-contribution credit). Id. at 8, 118. Subtracting the $156,363 refund it claimed on its original return, Aisin claimed a refund of $249,268. Id. While processing Aisin's amended return, the Department discovered some of its earlier miscalculations, and in April, 2006, it issued a "Proposed Assessment" to Aisin stating that Aisin owed $616,062[5] for tax-year 2001. Id. at 11, 157, 194. Aisin filed timely protests to the proposed assessment, claiming that the statute of limitations had expired and requesting a hearing. Id. at 11, 159-60, 163-65. Rather than hold a hearing, the De-

---

[3] This mistake was allegedly the culmination of several different errors. First, the Department recorded Aisin's first-quarter tax payment of $360,000 for 2000 as $830,000, thereby giving Aisin credit for $470,000 more than it actually paid. Id. at 4, 12-13, 196. Second, because of Aisin's election to transition after September 30, 1999, from a fiscal tax year to a calendar tax year, which resulted in a short-year tax period from October 1, 1999, to December 31, 1999, the Department recorded Aisin's carry-forward overpayment of $44,493 from 1999 as $540,980, thereby giving Aisin credit for $496,487 more than it was due. Id. These two amounts ($470,000 + $496,487) sum to $966,487, $848 less than the credit of $967,335. We are unable to account for this discrepancy from the record and leave it for the trial court to resolve on remand if material.

[4] The Department did not give credit for one of the $300,000 quarterly payments it made in 2001 or for the $357,000 extension payment, which was mistakenly applied toward 2002. Id. at 6, 192-93.

[5] The Department appears to have arrived at this figure as follows: The Department had miscalculated Aisin's credits at $1,768,335 ($1,767,335 + $1,000 college-contribution credit). Aisin's amended tax liability was $1,052,369. The difference between the miscalculated credits and the amended tax liability resulted in an "overpayment" of $715,966. The Department had applied $156,363 of that overpayment to Aisin's 2002 tax liability. Thus, the "overpayment" was $559,603. And since the "overpayment" (based on these numbers) should have been only $559,603, the Department determined that it had issued to Aisin an excessive refund of $511,784 ($1,071,387 - $559,603). This "excessive payment" plus interest of $104,278 equaled the amount shown in the proposed assessment ($616,062). See id. at 9-11, 193-94.

partment cancelled the proposed assessment because it had finally discovered all of the errors and no longer believed that Aisin had underpaid its taxes. Id. at 179, 192, 195; Appellant's Br. 5; Appellant's Pet. to Transfer 3. Rather, the Department agreed that Aisin had paid the proper amount of taxes. Appellant's App. 7, 9, 12-13, 191-92; Appellant's Br. 5; Appellant's Pet. to Transfer 3. Subsequent efforts by the Department to recover the erroneously issued funds were unsuccessful, so the Department referred the matter to the Attorney General.

The State, on behalf of the taxpayers of Indiana, filed a complaint against Aisin in Jackson Superior Court. The complaint raised claims of unjust enrichment, theft, statutory treble damages, and constructive trust. The State claimed a loss of $1,146,062 (and treble damages of $3,438,186).[6] Aisin filed a motion to dismiss for lack of subject matter jurisdiction, Ind. Trial Rule 12(B)(1), and a motion to dismiss for failure to state a claim, T.R. 12(B)(6).

The trial court granted Aisin's motion to dismiss for lack of jurisdiction, concluding that this matter fell within the exclusive jurisdiction of the Indiana Tax Court. It reasoned that a statutory remedy existed because the State could have used the Department to collect the money and that the payment arose from the relationship of taxpayer and tax collector.

The Court of Appeals affirmed, holding that whether and to what extent mistakes were made in this case were "quintessentially tax matters" and that the Department could not unilaterally cancel a proposed assessment in an effort to circumvent the jurisdiction of the Indiana Tax Court. State ex rel. Zoeller v. Aisin USA Mfg., Inc., 926 N.E.2d 83, 88-89 (Ind. Ct. App. 2010).

The State sought, and we granted, transfer, State ex rel. Zoeller v. Aisin USA Mfg., Inc., 940 N.E.2d 823 (Ind. 2010) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

---

[6] During oral argument before this Court, the State said that it was no longer seeking treble damages.

**Discussion**

The only issue in this appeal is whether the Jackson Superior Court has subject matter jurisdiction[7] over this case. The Jackson Superior Court has subject matter jurisdiction over all civil and criminal cases, except where exclusive jurisdiction has been conferred by law upon a different court with the same territorial jurisdiction. See Ind. Code § 33-33-36-4 (2008) (providing that the Jackson Superior Court has the same jurisdiction as the Jackson Circuit Court); see also I.C. § 33-28-1-2(a) (defining the jurisdiction of the circuit courts).

In 1986, the General Assembly created the Indiana Tax Court to channel tax disputes into a single specialized tribunal, thereby ensuring the uniform interpretation and application of the tax laws. State ex rel. Ind. Att'y Gen. v. Lake Superior Court, 820 N.E.2d 1240, 1247 (Ind. 2005) (citation omitted). The Tax Court has exclusive subject matter jurisdiction over "original tax appeals," I.C. §§ 33-26-3-1, -3, and its territorial jurisdiction is statewide, Ind. Tax Court Rule 13. Therefore, if the Tax Court has jurisdiction over this case, then the Jackson Superior Court does not.

Though exclusive, the Tax Court's jurisdiction is limited to "original tax appeals" and any other jurisdiction specifically conferred by statute. I.C. § 33-26-3-3; Tax Ct. R. 13. We consider only whether the State's case against Aisin is an original tax appeal because no other statute specifically confers jurisdiction on the Tax Court in this case. A case is an original tax appeal only if two statutory requirements are satisfied. First, the case must be one that "arises under" Indiana tax law. I.C. § 33-26-3-1. Second, the case must be an initial appeal of a final determination made by, inter alia, the Department. Id. Interpreting these requirements and determining whether the Tax Court has jurisdiction are matters of legislative intent. Lake Superior Court, 820 N.E.2d at 1247.

---

[7] Subject matter jurisdiction is the power of a court to hear and decide a particular class of cases to which a particular case belongs. K.S. v. State, 849 N.E.2d 538, 540, 542 (Ind. 2006).

# I

## A

This Court first interpreted the meaning of "arises under" for purposes of Tax Court jurisdiction in State v. Sproles, 672 N.E.2d 1353 (Ind. 1996). After Sproles had been charged with marijuana possession, the Department had sought to collect from him $154,996 in unpaid taxes and penalties under the Controlled Substance Excise Tax ("CSET"), which taxed the unlawful possession of a controlled substance. Id. at 1355. Sproles pled guilty to one count of unlawful possession and then filed a claim in Lawrence Circuit Court seeking a declaratory judgment that the CSET violated his rights under the Double Jeopardy Clause of the Fifth Amendment. See id. The circuit court entered judgment in Sproles's favor. Id.

On direct appeal, we were asked to determine the scope of the Tax Court's exclusive jurisdiction. To give effect to the legislative purpose for the Tax Court, we held that a case "arises under" Indiana tax law if (1) "an Indiana tax statute creates the right of action," or (2) "the case principally involves collection of a tax or defenses to that collection." Id. at 1357. We concluded that Sproles's claim arose under the tax laws because it principally involved a defense to the Department's attempt to collect a tax – Sproles had contended that the Department could not collect the CSET because to do so would violate his federal constitutional rights. Id.

We have continued to interpret the Tax Court's "arises under" jurisdiction broadly within the framework established by Sproles. For example, any case challenging the collection of a tax or assessment arises under the tax laws, whether the challenge is premised on constitutional, statutory, or other grounds. See, e.g., Lake Superior Court, 820 N.E.2d at 1247; State Bd. of Tax Comm'rs v. Ispat Inland, Inc., 784 N.E.2d 477, 481 (Ind. 2003); State v. Costa, 732 N.E.2d 1224, 1224-25 (Ind. 2000); State Bd. of Tax Comm'rs v. Montgomery, 730 N.E.2d 680, 682-84 (Ind. 2000). And the challenge need not be to the collection directly – challenges to earlier steps in the taxation or assessment process arise under the tax laws. See, e.g., Lake Superior Court, 820 N.E.2d at 1243-45 (challenging reassessment of property valuations on which property-tax

6

calculation would be based); Ispat Inland, 784 N.E.2d at 479-80 (challenging audit conducted after taxes were paid because the audit might have resulted in a deficiency).

The Sproles "arises under" test has proved to be relatively straightforward and easy to apply. Only once before today have we revisited that holding in any detail, and we concluded that the issue in that case fell squarely within Sproles. See Lake Superior Court, 820 N.E.2d at 1247 (holding that challenges to assessments arise under tax law). Most of our cases addressing the Tax Court's jurisdiction concern whether there has been a "final determination" sufficient to satisfy the second requirement of Indiana Code section 33-26-3-1. E.g., Ispat Inland, 784 N.E.2d at 481-83; Montgomery, 730 N.E.2d at 684-85. And in those cases it was clear that the case arose under the tax law because they involved challenges to the collection of a tax. E.g., Ispat Inland, 784 N.E.2d at 481; Montgomery, 730 N.E.2d at 684.

**B**

The State argues that both the Court of Appeals and the trial court went beyond the holding of Sproles and, therefore, beyond the statutory grant of exclusive Tax Court jurisdiction. The Court of Appeals acknowledged that the State's claims "do not directly involve the collection of a tax or a defense to that collection,"[8] Aisin, 926 N.E.2d at 88, but held that the case arises under the tax laws because whether and to what extent mistakes were made are "quintessentially tax matters." Id. This case, however, is itself not "quintessentially" a tax matter because the claims and alleged facts are far from typical. In point of fact, the Court of Appeals clearly departed from Sproles by finding that this case arises under the tax law even though neither of the two jurisdictional tests was satisfied. And this departure was unwarranted.

The trial court also concluded that this case arose under the tax laws. But unlike the Court of Appeals, the trial court held that the case involved the collection of a tax because the dispute involved a taxpayer and a tax collector. In essence, the trial court's approach would find that a case arises under the tax laws anytime it involves the Department or another tax agency.

---

[8] The court also acknowledged that neither party claimed that a tax statute created the State's right of action. Aisin, 926 N.E.2d at 87.

7

Cf. Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 822-25 (1824) (holding that a case was one "arising under" federal law for purposes of Article III of the U.S. Constitution because the Bank was created by a federal charter and that law gave the Bank the power to sue and be sued).  We think that the General Assembly did not intend such a result.  First, if every case involving the Department were intended to fall within the Tax Court's exclusive jurisdiction, the General Assembly could have said so.[9]  Second, this approach would not comport with the purpose of creating a specialized tribunal to provide for the uniform interpretation and application of the tax laws.  For example, under the trial court's rationale, the Department's initiation of proceedings supplemental in a general trial court to collect on already-issued tax warrants would fall within the Tax Court's exclusive jurisdiction, even though at that point there would be no need to interpret or apply the tax laws.  But we have already held that such a case does not fall within the Tax Court's jurisdiction.  See State ex rel. Ind. Dep't of Revenue v. Deaton, 755 N.E.2d 568, 570-72 (Ind. 2001).  We do not think the General Assembly intended for every case in which a taxpayer and a tax-collecting agency are parties to be one that arises under the tax laws.

Today we reaffirm our holding in Sproles interpreting the term "arises under" as that term is used in Indiana Code section 33-26-3-1.  Accordingly, a case arises under Indiana tax law if an Indiana tax statute creates the right of action or if the case principally involves the collection of a tax or defenses to the collection of a tax.  Sproles, 672 N.E.2d at 1357.

## II

Turning to the present case, Aisin does not contend that the State's right of action is created by a tax statute.  Therefore, we consider whether this case principally involves the collection of a tax or defenses to the collection of a tax.

---

[9] And as a general matter, whether a case "arises under" a certain law depends on the nature of the case, not on the identity of the parties.  Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 378 (1821).  Osborn was the rare "arising under" case in which the identity of the party necessarily affected the nature of the case.

**A**

The State agrees that Aisin owed $1,300,637 in estimated corporate income taxes for 2001. It also agrees that Aisin actually paid $1,457,000 toward its 2001 tax bill. Those payments came from four quarterly payments totaling $1,100,000 that were made during 2001 and an extension payment of $357,000 that was made in April, 2002, to extend the filing deadline. Accordingly, when Aisin made its extension payment it satisfied its tax liability in full and that liability was discharged. See Nyce v. Schmoll, 40 Ind. App. 555, 82 N.E. 539, 540 (1907) (citations omitted) ("[T]he way to discharge a tax is to pay it."); cf. Ind. Code § 6-8.1-8-1 (2010) (providing that where taxes are paid via certain negotiable instruments, the tax liability is not discharged until the instrument is honored by the institution from which it was drawn). It was only after Aisin paid its 2001 taxes that the accounting and clerical errors coalesced and the Department issued the mistaken refund. None of those errors were due to a misunderstanding of the tax laws.

To be sure, one set of accounting errors in this case caused the RPS to miscalculate Aisin's original tax due as $539,584, rather than $1,300,637. Aisin contends that, because the State calculated a lower tax liability and the "refund" was based on that miscalculation, the State seeks to recover unpaid taxes. Put differently, although Aisin originally paid the proper amount of tax, the State's issuance of the allegedly erroneous refund resulted in a net underpayment of taxes, and the present cause of action attempts to remedy that underpayment. We disagree.

Aisin's argument overlooks the fundamental difference between what the State seeks to recover (a mistaken payment caused solely by accounting and clerical errors) and what Aisin originally owed and paid to the Department (its tax liability). Cf. O'Bryant v. United States, 49 F.3d 340, 346 (7th Cir. 1995) (making this distinction under the federal tax laws). Having already paid its taxes in full, Aisin owes this money to the State because it is unjustly enriched, not because it has any outstanding tax liability for 2001. Cf. id. And determining whether and to what extent mistakes were made has nothing to do with Indiana tax law.

In its briefs to this Court and to the Court of Appeals, Aisin argued generally that reference to the tax laws is required in this case to determine whether mistakes were made, but it cited no specific tax laws. At oral argument before this Court, Aisin's counsel asserted for the first time that Aisin believes the check was for an overpayment of taxes in 1999 and 2000 that was discovered by the Department during an audit. Counsel argued that this audit revealed that Aisin had overpaid its taxes for those prior years by over $967,000 and that the check was for that amount with interest. Thus, according to counsel, resolution of this case requires determining whether the statutes governing the calculation of carry-forward credits are implicated. According to the record, the check was dated September 9, 2003, and negotiated shortly thereafter, Appellant's App. 26, but the Department's audit of Aisin's 2000 tax return was not completed until January 14, 2004, id. at 28. Thus, under counsel's view, the check was issued on the basis of an audit that had yet to be completed. This discrepancy, along with the fact that Aisin did not raise this argument until oral argument before this Court, provides no basis to conclude that the tax laws governing the calculation of carry-forward credits are implicated here.

This is essentially an accounting case where the questions to be resolved are whether Aisin made the payments with which it was credited. Had Aisin neither paid nor owed any income taxes but still received the check because of a clerical error, the State's action to recover would not be an action to recover any unpaid "tax" because Aisin would not have owed any tax. We see no difference here where one of the clerical errors was mistakenly entering data into a computer, which resulted in a miscalculated tax liability, after the taxpayer had already paid its true taxes in full.

To hold that this "refund," issued solely because of accounting or clerical errors, represents part of a tax would not serve the legislative purpose of ensuring the uniform interpretation and application of the tax laws because the tax laws are not implicated. Every case that this Court has held arises under Indiana tax law has involved a dispute as to the interpretation or application of a tax law. The taxpayers in Sproles, Lake Superior Court, Montgomery, and Costa each asked us to interpret a tax law as unconstitutional. The taxpayer in Ispat Inland asked us to interpret a tax law as forbidding a county assessor from outsourcing its auditing functions to a

10

private firm. The present case, however, is an accounting case and requires no consideration of substantive tax law. Aisin has implicated no tax laws and it has challenged no tax laws.

Similarly, this case differs from Zayas v. Gregg Appliances, Inc., 676 N.E.2d 365 (Ind. Ct. App. 1997), trans. denied, upon which Aisin places heavy reliance. In that case, a taxpayer brought a class-action suit challenging a retailer's collection of sales tax on a delivery fee, instead of first requesting refunds from the retailer and the Department, as was required by statute. Id. at 365-66. The Court of Appeals held that no court had subject matter jurisdiction over the taxpayer's class-action suit because the taxpayer had failed to exhaust his administrative remedies. Id. at 367-68.

Zayas had attempted to circumvent the exhaustion-of-administrative-remedies requirement by arguing that his case was "not an action for a tax refund, but an action for return of monies improperly collected by Gregg," id. at 367 (footnote omitted), because, from his perspective, the charge on the delivery fee had been "a mere purchase price overcharge," not an authorized sales tax, id. The court rejected this argument finding that Zayas's proposed distinction was "too fine to gain . . . acceptance," id., because adopting Zayas's position would have meant that "any time a tax were improperly collected by a retail merchant, the consumer could maintain an action against the retailer thereby rendering moot the refund provisions of the statute, as they relate to requesting a refund from the retailer and then applying to the [Department]," id.

Resolution of the claim in Zayas required interpreting and applying tax laws to determine if Gregg had had authority to collect sales tax on a delivery fee. But, again, the tax laws do not need to be interpreted or applied in this case. The State agrees that Aisin's tax liability (based on the original return) was $1,300,637. The $1,146,062 check issued to Aisin was based entirely on accounting and clerical errors and not on any misinterpretation or misapplication of the tax laws.

The legislative purpose for the Tax Court's existence is to ensure the uniform interpretation and application of Indiana tax law. That purpose would not be served by the Tax Court exercising jurisdiction over a case devoid of any tax-law issues. Therefore, we hold that a refund issued because of an accounting error and having nothing to do with the interpretation or applica-

tion of substantive tax law does not revive the original tax liability, where such liability has already been discharged by the taxpayer's full payment. And because such a refund is issued to a taxpayer owing no tax, the State has a claim for restitution.

**B**

The central claim in this case is a typical common-law[10] claim for unjust enrichment, brought by the government, in that it alleges that Aisin was unjustly enriched when it received public funds to which it was not entitled and therefore should be liable in restitution.[11] See, e.g., Zoeller v. E. Chi. Second Century, Inc., 904 N.E.2d 213, 220-21 (Ind. 2009) (holding that the Indiana Attorney General could bring a claim for unjust enrichment against a private for-profit corporation); Cmty. Care Ctrs., Inc. v. Sullivan, 701 N.E.2d 1234, 1240-42 (Ind. Ct. App. 1998) (holding that the State was entitled to restitution where valid governmental regulations had been enjoined and improper payments had been made under the injunction, which was subsequently reversed), trans. denied; see also Bd. of Educ. v. Holt, 354 N.E.2d 534, 535 (Ill. App. Ct. 1976) (holding that school board could bring a claim to recover money mistakenly paid to a former teacher); In re Guardianship of Kordecki, 290 N.W.2d 693, 696-97 (Wis. 1980) (Abrahamson, J.) (holding that county had common-law authority to recover erroneous public-assistance payments). Indeed, government restitution claims to recoup mistakenly disbursed public funds are supported by policies that are stronger than those supporting restitution claims by private individuals. E.g., Morrow v. Surber, 11 S.W. 48, 49 (Mo. 1889); Graham Douthwaite, Attorney's Guide to Restitution § 10.2, at 407 (1977); see also City of Duluth v. McDonnell, 63 N.W. 727,

---

[10] Characterizing restitution for unjust enrichment as either a common-law claim or an equitable claim has long been difficult. Restatement (Third) of Restitution & Unjust Enrichment § 4 cmt. a (Tentative Draft No. 7, 2010). The proposed Restatement (Third) addresses this problem by providing that "restitution and unjust enrichment may have originated in law, in equity, or in a combination of the two," id. § 4(1), and eliminating the need for a claimant to demonstrate the inadequacy of legal remedies before seeking equitable remedies, id. cmt. a. For purposes of this opinion, we refer to a claim for restitution as a common-law claim.

[11] "A person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution & Unjust Enrichment § 1 (Tentative Draft No. 7, 2010). Liability in restitution is premised on the defendant receiving an economic benefit where retaining that benefit without payment would result in the defendant being unjustly enriched at the plaintiff's expense. Id. cmt. a. A defendant who is liable in restitution "must either restore the benefit in question (or its traceable product), or else pay money in the amount necessary to eliminate unjust enrichment." Id. The terms "restitution" and "unjust enrichment" are generally synonymous when referring to a theory of liability. Id. cmt. c.

12

728 (Minn. 1895) (suggesting that public money may be recovered even where recovery would not be equitable in a purely private dispute). Although the government generally has a common-law cause of action to recover public funds paid out by mistake, the General Assembly can limit or even eliminate that right by statute. Cf. United States v. Wurts, 303 U.S. 414, 415-16 (1938) (discussing the effect of a two-year statute of limitations enacted by Congress on the otherwise unlimited common-law right of the federal government to recover erroneously issued tax refunds).

Aisin argues that the Department could have recovered the allegedly erroneous refund by issuing a proposed assessment within the three-year statute of limitations but that any action to collect the money, regardless of legal theory, is time barred because the limitations period expired before the errors were even discovered. It argues that this statute abrogates the State's common-law right to bring a restitution action and that this was the Department's exclusive remedy.

The assessment statute provides that "[i]f the department reasonably believes that a person has not reported the proper amount of tax due, the department shall make a proposed assessment of the amount of the unpaid tax on the basis of the best information available to the department." Ind. Code § 6-8.1-5-1(b) (2010). And unless otherwise specified, "the department may not issue a proposed assessment under [Indiana Code section 6-8.1-5-1] more than three (3) years after the latest of the date the return is filed, or . . . [t]he due date of the return." I.C. § 6-8.1-5-2(a). The Tax Court has held that the three-year statute of limitations begins running when the original return is filed (or on the original due date) and that the filing of an amended return does not restart the limitations period. UACC Midwest, Inc. v. Ind. Dep't of State Revenue (UACC I), 629 N.E.2d 1295, 1301 (Ind. Tax Ct. 1994). But cf. 45 Ind. Admin. Code 15-5-7(d) (2011) (see http://www.in.gov/legislative/iac/) (providing that if amended return is filed the limitations period runs from the filing date, but once the original limitations period has run, the amount the Department may assess is limited to any amount claimed as a refund on the amended return).[12]

---

[12] Aisin filed its return on or immediately before the due date in October, 2002, so under Indiana Code subsection 6-8.1-5-2(a) as interpreted by the Tax Court in UACC I, the Department would have had to

Aisin's reliance on the statutory assessment vehicle in this case is misplaced. The plain language of the statute makes it clear that before the Department can make a proposed assessment, it must "reasonably believe[] that [the taxpayer] has not reported the proper amount of tax due." I.C. § 6-8.1-5-1(b) (emphasis added). Here, the Department did not have such a belief. The Department agrees that Aisin "reported the proper amount of tax due" on both its original and amended returns. Therefore, the Department did not have statutory authority to use the assessment route to recover this allegedly erroneous refund.

Contrary to Aisin's contention, our conclusion does not conflict with UACC Midwest, Inc. v. Indiana Department of State Revenue (UACC II), 667 N.E.2d 232, 243 n.8 (Ind. Tax Ct. 1996), in which the Tax Court rejected the argument that the Department lacked statutory authority to recover an erroneously issued refund and concluded that the assessment procedure of Indiana Code section 6-8.1-5-1 was available. The dispute in UACC II was whether UACC's gross income was subject to a tax rate of 0.3% or 1.2%. Id. at 236. Although UACC had filed its original return calculating its taxes at a rate of 1.2%, it had subsequently filed an amended return claiming that it was subject to a tax rate of 0.3% and seeking a refund for overpayment of gross income taxes, which the Department granted. Id. at 235. The Tax Court concluded that UACC was actually subject to taxation at 1.2%, id. at 236-38, and that the Department was entitled to recovery, id. at 243. But the reason the Department could use the assessment vehicle was that the refund was granted on the basis of UACC's underreporting its income tax. In other words, unlike the present case, the Department in UACC II had a reasonable belief that the taxpayer had not reported the proper amount of tax and could therefore issue a proposed assessment.[13]

---

have issued a proposed assessment by October, 2005. Therefore, the Department's issuance of a proposed assessment on April 3, 2006, was outside the statute of limitations. Aisin argues that the Department recognized this and unilaterally cancelled the assessment so that it could bring the current action and attempt to circumvent the statute of limitations.

[13] Aisin also relies on Letter of Findings 07-0451, Ind. Reg. LSA Doc. No. 08-0040 (Jan. 30, 2008) (see http://www.in.gov/legislative/register/irtoc.htm), but its reliance is similarly misplaced. In that case, the taxpayer had claimed and received improper refunds on sales tax collected and remitted to the Department. Id. After determining that the refunds were issued in error, the Department issued a proposed assessment to recover them and the taxpayer protested. Id. The Department concluded that the proposed assessment was proper under Indiana Code section 6-8.1-5-1(b) because by claiming the refunds the taxpayer had not reported the proper amount of tax. Id. Like UACC II, the taxpayer subject to the Letter of Findings had not reported the proper amount of tax due because it had claimed the improper refunds. If a

14

Under Indiana Code section 6-8.1-5-1, the Department does not have authority to use the assessment vehicle to recover erroneously issued refunds <u>unless</u> the refund is caused by the taxpayer making a mistake in reporting its tax or claiming an improper refund.[14] Thus, although Indiana tax statutes provide the exclusive remedy for a taxpayer to recover an overpayment of taxes, <u>Sproles</u>, 672 N.E.2d at 1362, we perceive no limitation imposed by the tax law on the State's common-law claim for restitution <u>in this case</u>.

## Conclusion

The present case is not one that "arises under" Indiana tax law and therefore is not an original tax appeal over which the Tax Court has exclusive jurisdiction under Indiana Code section 33-26-3-1.[15] Consequently, the Jackson Superior Court has subject matter jurisdiction. We reverse the decision of the trial court and remand for proceedings on the merits of the State's claims.

Shepard, C.J., and David, J., concur.

Rucker, J., dissents with separate opinion in which Dickson, J., concurs.

---

taxpayer claims a refund to which it is not entitled, its reported tax is reduced by the amount of that refund. For example, if a taxpayer owed $10,000 in taxes, paid that amount, but then claimed an improper refund of $3,000, the taxpayer will have reported that it owed $7,000, instead of the $10,000 it actually owed. In the present case, however, Aisin did not claim the money at issue and therefore did not report a lower amount of taxes due. We also note that Letter of Findings 07-0451 has no precedential value here. A Letter of Findings is a written ruling by the Department deciding a specific taxpayer's protest to an assessment. I.C. § 6-8.1-5-1(f); 45 I.A.C. 15-3-2(d), 15-5-4. As a general matter, only the taxpayer to whom a Letter of Findings is issued is entitled to rely on it, but "other taxpayers with substantially identical factual situations" may also rely on a Letter of Findings "for informational purposes in preparing returns and making tax decisions." 45 I.A.C. 15-3-2(d)(3). This case does not involve a taxpayer's claim for an improper refund of a sales tax, so the facts are not "substantially identical" to the situation in Letter of Findings 07-0451.

[14] The General Assembly recently enacted a statute covering at least some erroneously issued refunds. <u>See</u> Pub. L. No. 182-2009, § 251, 2009 Ind. Acts 2005, 2597-98 (codified as amended at I.C. § 6-8.1-5-2(g)). The effective date of the statute was July 1, 2009. <u>Id.</u> Because the parties agree that this statute does not apply to this case, we do not consider it.

[15] Because we conclude that the first statutory requirement of Indiana Code section 33-26-3-1 is not satisfied, we do not consider the "final determination" requirement.

15

**Rucker, Justice, dissenting.**

I respectfully dissent. What is really at stake in this case is that the State apparently acted under the assumption that it had missed a statute of limitations deadline in a tax proceeding. See Appellee's Br. at 10 ("The State's real problem here is . . . that the [Department of Revenue] failed timely to pursue its claim under the applicable statute of limitations and then chose not to take final administrative action so as to proceed to Tax Court." (emphasis omitted)). The State does not contest Aisin's assertion. Instead it is reasonable to conclude that acting under the assumption that it could obtain no relief in the Tax Court by reason of a statute of limitation, the State attempted an end-run and filed this action in the Superior Court. Both the trial judge and the Court of Appeals concluded that this matter belongs before the Tax Court. Given the lengths to which the majority was required to analyze Aisin's various tax filings and the resultant repercussions, I agree this is a tax case and would affirm the judgment of the trial court.

Dickson, J., concurs.