**STATE BOARD OF TAX COMMISSIONERS, et al., Appellants (Respondents below),**

v.

**ISPAT INLAND, INC., Appellee (Petitioner below).**

No. 49S10–0206–TA–349.

Supreme Court of Indiana.

March 6, 2003.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General of Indiana, Office of the Attorney General, Indianapolis, IN, Brian P. Popp, Laszlo & Popp, LLP, Merrillville, IN, Charles C. Meeker, Parker, Poe, Adams, & Bernstein, LLP, Raleigh, NC, Attorneys for Appellant.

Francina A. Dlouhy, James H. Ham, III, Baker & Daniels, Indianapolis, IN, Attorneys for Appellee.

Mark J. Colucci, Kroger Gardis & Regas, LLP, Indianapolis, IN, Attorney for Amicus Curiae.

SHEPARD, Chief Justice.

A taxpayer protested because the local assessor outsourced a personal property audit to a third party contractor. It sought relief in the Indiana Tax Court. The Tax Court rejected a challenge to its subject matter jurisdiction and enjoined the county from proceeding with the audits.

Applying standard principles of statutory construction and administrative law, we hold that the Tax Court does not have subject matter jurisdiction to enjoin an audit being pursued by the assessor's contractor. We therefore reverse.

### Facts and Procedural History

Ispat Inland, Inc. ("Ispat") owns and manages Inland Steel Company, an integrated steel mill in Lake County that Ispat purchased in 1998. Ispat filed a business personal property return in June 2000, reporting the tangible personal property located at the mill.

The Lake County Board of Commissioners ("County") contracted with a North Carolina accounting firm, Tax Management Associates, Inc. ("TMA"), to perform various "audits to verify the accuracy of taxpayers' listings of personal property for the *ad valorem* taxation." Pursuant to its contract with TMA, the County specifically sought to have TMA conduct an audit of Ispat's business personal property tax returns. The County wanted to audit Ispat's return because it was concerned that Ispat "appear[ed] to have allocated less than forty 40% of the purchase price [of Inland steel] to machinery and equipment while [m]achinery and equipment of large manufacturers typically compromise sixty percent (60%) to seventy-five percent (75%) of a business' assets". (Resp't State Board of Tax Commr's Br. at 3.)

In early February 2001, the Lake County Assessor's office ("Assessor") called Ispat and requested that it contact TMA employee Tom Tucker. Counsel for Ispat called Tucker, who stated he had a copy of Ispat's 2000 personal property return and wanted to schedule an audit. Several days after their phone conversation, Tucker sent Ispat's counsel a list of requested audit items.

Ispat's counsel then wrote the Assessor questioning whether the Assessor possessed authority to disclose confidential information to TMA and its representative Tucker. The Assessor's later reply recognized that auditors like TMA were not referenced in the confidentiality statute, but said the Assessor and TMA would treat all of Ispat's information in a confidential manner.[1]

Ispat continued to object. The Assessor sought and obtained guidance from the State Board of Tax Commissioners ("State

---

1. A number of the items Tucker requested for the audit were considered confidential under Ind.Code § 6–1.1–35–9 (2000): "[a]ll information which is related to earnings, income, profits, losses, or expenditures" that is given to or acquired by an assessing official or employee is confidential. *See also* Ind. Admin.Code tit. 50, r. 4.2–15–11(a) (1996).

Board")[2] on the ability to contract with third parties and to disclose confidential information to them. A senior administrative law judge with the State Board opined that local government officials were allowed to contract with third parties to conduct their official duties and could disclose confidential information to those third parties in relation to the contracted job. The Assessor then contacted Ispat and again demanded to schedule an audit with TMA.

Ispat filed a petition with the State Board requesting that it "interpret the property tax laws" under Ind.Code § 6–1.1–35–1 (1998)[3] and instruct the Assessor that (1) his office could not conduct an audit of Ispat's 2000 personal property return because the statute of limitations to change the assessment had expired; (2) the confidentiality statute precluded the Assessor from disclosing Ispat's confidential information to TMA or TMA's employees; and (3) he may not delegate his official duties regarding business personal property taxes to contractors such as TMA. *Ispat Inland, Inc. v. State Bd. of Tax Comm'rs,* 757 N.E.2d 1078, 1081–82 (Ind. Tax Ct.2001). Ispat and Lake County each filed a brief with the State Board.

The Board thereafter issued its "Decision of the State Board of Tax Commissioners." It declared that the Assessor could hire contractors to assist with audits. It reasoned that the "practical reality [is]

that local assessing officials lack sufficient expertise among their paid, full-time staff to perform some auditing and similar tasks pertaining to personal property assessment." (Pet'r Injunction Ex. 1 at 9–10.)

■ Ispat filed a tax appeal in the Tax Court. It sought to enjoin the Assessor from disclosing Ispat's confidential information to TMA and from delegating his personal property authority to TMA. Conversely, the State Board moved to dismiss the case for lack of subject matter jurisdiction. The Tax Court concluded it had subject matter jurisdiction to hear the appeal because Ispat's appeal arises under Indiana tax law, the State Board reached a final determination, and Ispat met the requirements for the issuance of a permanent injunction. *Ispat,* 757 N.E.2d at 1083, 1086. Lake County, the Assessor and the Board sought review here, which we granted pursuant to Ind. Appellate Rule 63(A).[4] The matter arrives here, without any disputed facts, as a pure question of law. We review these *de novo.*

## Subject Matter Jurisdiction

■ Courts that have subject matter jurisdiction of an action and which have obtained jurisdiction of the parties have the power to hear and determine such cases. *State ex rel. Public Service Comm'n v. Marion Circuit Court,* 230 Ind. 277, 100 N.E.2d 888 (1951). Subject matter jurisdiction is the power of the court to

2. As of January 1, 2002, the State Board's tasks were divided into two new agencies: The Department of Local Government Finance, which has the authority to collect taxes (*See* Ind.Code Ann. §§ 6–1.1–30–1.1, 14 (West 2002)), and the Indiana Board of Tax Review, which shall review property tax appeals (*See* Ind.Code Ann. §§ 6–1.5–4–1 (West 2002)).

3. The duties of the State Board include to: "(1) interpret the property tax laws of this state; [and to] (2) instruct property tax offi-

cials about their taxation and assessment duties and ensure that the county assessors, township assessors, and assessing officials are in compliance with section 1.1 of this chapter[.]" I.C. § 6–1.1–35–1 (1998).

4. Petitioner and Respondent raise a statute of limitations issue. The Tax Court did not need to address this issue, in light of its decision on other points. Thus, it does not constitute part of our review of the Tax Court's decision.

hear and decide a particular class of cases. *See Snelson v. State,* 16 Ind. 29 (1861)[5]. If a court does not have subject matter jurisdiction, any judgment that it renders is void. *Hoang v. Jamestown Homes, Inc.,* 768 N.E.2d 1029, 1032 (Ind.Ct.App. 2002).

## Jurisdiction of the Tax Court

The statute creating the Indiana Tax Court grants it exclusive jurisdiction over any case that arises under the tax laws of [Indiana] and that is an initial appeal of "a final determination made by" the State Board. Ind.Code § 33–3–5–2(a) (1996). We have defended the exclusivity of its jurisdiction against encroachment, saying, for example: "[T]here is no need to allow taxpayers to circumvent the exclusive jurisdiction of the Tax Court over original tax appeals. With the removal of the requirement that a tax be paid before it can be challenged in court, the adequacy of the current administrative scheme is not open to question." *State v. Sproles,* 672 N.E.2d 1353, 1361–62 (Ind.1996).

On the other hand, the legislature has been quite explicit in providing that "[I]f a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the Tax Court does not have jurisdiction to hear the appeal." I.C. § 33–3–5–11(a), *See State Bd. of Tax Comm'rs v. Mixmill Mfg. Co.,* 702 N.E.2d 701, 702 (Ind.1998).

■ Generally, two jurisdictional requirements must exist for the Tax Court enabling statute to apply. First, the case must arise under the tax laws of Indiana. Ind.Code § 33–3–5–2(a) (1996). Second,

the case must be an initial appeal of a final determination made by the appropriate agency, the State Board in this case. *Id.*

This Court has interpreted the "arising under" jurisdictional language in a broad manner. *Sproles,* 672 N.E.2d at 1357. In the present case, the parties do not dispute that the case arises under the Indiana tax laws, as the nucleus of the case is based on tax law. While the first jurisdictional requirement is met, a dispute over tax law does not alone grant jurisdiction. The central issue in this case is whether the State Board issued a final determination.

## Was this a Final Determination?

■ A final determination of the State Board for purposes of Tax Court jurisdiction is an order that determines the rights of, or imposes obligations on, the parties as a consummation of the administrative process. *Mills v. State Bd. of Tax Comm'rs,* 639 N.E.2d 698, 701 (Ind.Tax Ct.1994). Pursuant to the State Board's procedural rules, a final determination is any action of the Board of Tax Commissioners or the appeals division that is (1) designed as such by the Board of Tax Commissioners or appeals division, (2) the final step in the administrative process before resort may be made to the judiciary, or (3) deemed final under I.C. § 6–1.1–15–4[6] and I.C. § 6–1.1–15–5[7]. We conclude that a "final determination" in this setting is akin to a "final judgment" issued by a court, which Ind. Appellate Rule 2(H)(1) defines as one that "disposes of all claims as to all parties."

The Tax Court used a very liberal interpretation, concluding that the Board issued a final determination because no other ad-

---

**5.** *Snelson* was overruled in part, but not for this particular proposition.

**6.** Ind.Code Ann. § 6–1.1–15–4 (West 2000) establishes the state board procedure for petition for review.

**7.** Ind.Code Ann. § 6–1.1–15–5 (West 2000) addresses rehearing; judicial review; procedure.

ministrative proceeding occurred, the decision was signed by three of the Board's commissioners, and the decision determined the rights of and imposed obligations on the parties. *Ispat,* 757 N.E.2d at 1083–84. It said that a final determination is "an order that determines the rights of or imposes obligations on the parties as a consummation of the administrative process." *Ispat,* 757 N.E.2d at 1083.

Ispat contends that the Board's decision was a final determination as opposed to, say, an advisory opinion, because the dispute involved a real situation instead of a hypothetical one. (Pet'r Ispat Inland Br. at 10–13.) The State Board is regularly engaged in providing guidance to local officials at varying levels of formality from oral advice to published manuals. While an advisory opinion may often be generated by less than hypothetical situations, we have not found specific language that states an advisory opinion may only address hypothetical situations. Nor have we found any language that automatically transforms an advisory opinion into a final determination.

On the other hand, Ispat argues that there are alternative methods to reach a final determination and the Tax Court has used nontraditional paths to reach a final determination in the past.[8] While there have been said instances, we see no need to apply a nontraditional standard in the present case, as the facts do not support a need for deviation. In effect, Ispat argues that the Indiana Code should provide for "interlocutory appeals." It is not the law

at the moment. A final determination requires the completion of a two-part test, and Ispat has not satisfied the requirements.

This is not to say that the taxpayer was without an alternative means to obtain a final determination. Theoretically, Ispat had the option of refusing the demand for an audit, in which case the machinery of the tax system would produce appealable final determinations.[9]

The legislature's declaration that the Tax Court may not hear an appeal if the taxpayer "fails to comply with any statutory requirement for the initiation of an original tax appeal," Ind.Code § 33–3–5–11(a), expresses a standard tenet of administrative law. Under Indiana law, if a party is required by the Administrative Orders and Procedures Act to exhaust its administrative remedies before an agency prior to obtaining judicial review of the agency decision, courts are completely ousted of subject matter jurisdiction to hear the case at all. *Austin Lakes Joint Venture v. Avon Utilities, Inc.,* 648 N.E.2d 641, 644 (Ind.1995). A party is not entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. *Id.* (citing *Wilson v. Board of Indiana Employment Sec. Div.,* 270 Ind. 302, 305, 385 N.E.2d 438, 441 (Ind.1979)).

In *Sproles,* 672 N.E.2d at 1358, we observed that the exhaustion doctrine serves multiple objectives:

> Court stated that an order requiring a countywide reassessment of real property under I.C. § 6–1.1–4–9 is a final, appealable determination.)

---

**8.** Ispat argues that alternative means exist under *Miller v. Gibson Co. Solid Waste Management Dist.,* 622 N.E.2d 248 (Ind.Tax Ct.1993) (Tax Court determined the issue was final and it interpreted the language as final rather than foreclosing judicial review), *Matonovich v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1093 (Ind.Tax Ct.1999) (The Tax

**9.** Or, see, for example, *Tippecanoe County v. Indiana Manufacturers Ass'n,* 784 N.E.2d 463 (Ind.2003), decided today.

Premature litigation may be avoided, an adequate record for judicial review may be compiled, and agencies retain the opportunity and autonomy to correct their own errors. Even if the ground of complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues.

■■■■ In a few exceptional instances, however, a party may gain judicial review without satisfying the prerequisite. The leap is sometimes justified where pursuit of administrative remedies would be futile, where strict compliance would cause irreparable harm, and where the applicable statute is alleged to be void on its face. *Bellamy v. Gillis,* 722 N.E.2d 905 (Ind.Ct. App.2000). We are not persuaded that any of these exceptions apply here.

### Conclusion

We reverse the ruling of the Tax Court and direct that the State Board's motion to dismiss be granted.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.