

FILED

Dec 12 2019, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

James K. Gilday
Gilday & Associates, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Jessica R. Gastineau
Traci M. Cosby
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Muir Woods Section One
Association, Inc., et al.,

*Appellants-Plaintiffs,*

v.

Claudia O. Fuentes, Marion
County Treasurer; et al.,

*Appellees-Defendants.*

December 12, 2019

Court of Appeals Case No.
18A-CC-2643

Appeal from the Marion Superior
Court

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1802-CC-6237


**Bailey, Judge.**

# Case Summary

Pursuant to Indiana Code Section 6-1.1-15-1.1, Muir Woods Section One Association, Inc. ("Muir Woods") and Nantucket Bay Homeowners Association, Inc. ("Nantucket Bay") (collectively, at times, "the Homeowners Associations") obtained review and appeal of property tax assessments on common area parcels, for tax years 2006 through 2009. The Marion County Assessor ("the Assessor") and the Marion County Property Tax Assessment Board of Appeals ("PTABOA") agreed to zero assessments and the Marion County Treasurer ("the Treasurer") issued refund checks, which were allegedly deficient. Muir Woods and Nantucket Bay attempted collection in the Marion County Superior Court against the Assessor, the Treasurer, and the Marion County Auditor (collectively, "the Taxing Authorities").[1] The Taxing Authorities filed Indiana Trial Rule 12(B)(1) motions to dismiss for lack of subject matter jurisdiction, contending that the disputes arose under tax laws, and jurisdiction over the disputes, including any question as to exhaustion of administrative remedies, could only lie in the Indiana Tax Court ("the Tax Court"). The trial court consolidated the complaints and dismissed the consolidated complaint, with prejudice. This appeal by the Homeowners

---

[1] In the trial court, the Homeowners Associations characterized their claims as claims for collection or enforcement of an agreement. On appeal, they characterize their claims as suits to compel administrative rulings upon multiple property tax Form 17-T claims for refund. They also claim that they sought an order to the Marion County Treasurer to issue notifications, pursuant to Indiana Code Section 6-1.1-26-6, that the refund checks issued (but not negotiated) had become part of surplus funds, to trigger a right of reclamation. These contentions were not specified in the complaints, nor were they argued at the hearing upon the motion to dismiss.

Associations presents a single, consolidated issue of whether the Marion Superior Court has subject matter jurisdiction over this case. Because the claim is that the Homeowners Associations overpaid their property taxes and lack effective recourse under the then-existing property tax scheme, it is not a claim that the Marion Superior Court can adjudicate. We affirm the dismissal for lack of subject matter jurisdiction.[2]

# Facts and Procedural History

[2] Nantucket Bay filed real estate appeal petitions to challenge assessed values of its parcels for tax year 2006 and successive years. Nantucket Bay and the Assessor agreed that, for tax year 2006, eleven parcels had an assessed value of zero. The parties executed eleven copies of Form 134 to reflect the zero assessments. Those determinations were not appealed by either party.[3] Upon receiving Nantucket Bay's claims for refund, the Treasurer issued four checks, in the aggregate amount of $11,290.29. Nantucket Bay did not cash the checks. The funds may have been placed in the general fund of the county or into a surplus tax fund, pursuant to Indiana Code Section 6-1.1-26-6(c),[4] although Nantucket Bay allegedly did not receive notice of such action.

---

[2] However, the dismissal was not with prejudice. A dismissal with prejudice is a dismissal on the merits. *Fox v. Nichter Const. Co., Inc.*, 978 N.E.2d 1171, 1180 (Ind. Ct. App. 2012).

[3] At that time, Indiana Code Section 6-1.1-15-1, repealed effective July 1, 2017, provided an administrative procedure for the review and appeal of tax assessments.

[4] Indiana Code Section 6-1.1-26-6(c) provides: "If an excess payment is not claimed within the three (3) year period after November 10 of the year in which the payment was made and the county treasurer has given the

[3] Muir Woods filed real estate appeal petitions to challenge assessed values of its parcels for tax year 2006. On June 24 and June 25, 2011, the PTABOA issued determinations that, for tax year 2006, eighteen parcels had an assessed value of zero. On October 3, 2011, Muir Woods and the Assessor completed forms to reflect that, for tax year 2007, twenty-three parcels had an assessed value of zero and, for tax year 2009, one parcel had an assessed value of zero. The determinations were not appealed by either party. Upon receiving Muir Woods' claims for refund, the Treasurer issued a check in the amount of $11,481.42. Muir Woods did not cash the check.[5]

[4] In February of 2018, Nantucket Bay and Muir Woods each filed a "Complaint to Collect Determined Overpaid Real Estate Tax." (App. Vol. II, pgs. 18-26.) The Taxing Authorities filed motions to dismiss. On May 25, 2018, the trial court issued an order consolidating the actions. On August 8, 2018, the trial court conducted a hearing at which argument of counsel was heard. The parties agreed that: zero assessments were made as to the subject properties; there had been no appeal of the assessments; refund checks had been issued; and, during the ensuing years, no formal administrative challenges to the checks had been lodged. They did not directly address whether the issuance of

---

written notice required under subsection (d), the county auditor shall transfer the excess from the surplus tax fund into the general fund of the county. If the county treasurer has given written notice concerning the excess under subsection (d), the excess may not be refunded under subsection (a) after the expiration of that three (3) year time period." The Homeowners Associations deny receiving any statutory notice.

[5] Muir Woods asserts that the remittance check "erroneously included an amount for a parcel that did not belong to Muir Woods." Appellant's Brief at 15.

the checks triggered a right to any further administrative process.  Rather, the Taxing Authorities argued that the trial court should dismiss the case because "regardless of whether there is a final determination [by a relevant agency] or is a question of whether there's a final determination, those both are appropriate for the Indiana Tax Court."  (Tr., Vol. II, pg. 4.)

[5]     On September 4, 2018, the trial court issued an order dismissing the complaints "with prejudice."  Appealed Order at 1.  On October 4, 2018, the Homeowners Associations filed a motion to correct error.  On the following day, the trial court denied the motion to correct error.  This appeal ensued.

# Discussion and Decision

## Standard of Review

Trial Rule 12(B)(1) addresses the "[l]ack of jurisdiction over the subject matter."  In reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Trial Rule 12(B)(1), the relevant question is whether the type of claim presented falls within the general scope of the authority conferred upon the court by constitution or statute. *Robertson v. Anonymous Clinic*, 63 N.E.3d 349, 356 (Ind. Ct. App. 2016), *trans. denied*.  A motion to dismiss for lack of subject matter jurisdiction presents a threshold question with respect to a court's power to act. *Id.*  "The standard of review for a trial court's grant or denial of a 12(B)(1) motion to dismiss for lack of subject matter jurisdiction is 'a function of what occurred in the trial court.'" *Berry v. Crawford*, 990 N.E.2d 410, 414 (Ind. 2013) (citing *GKN Co. v.* Magness, 744 N.E.2d 397, 401 (Ind. 2001)), *reh'g denied*.  Where the facts before the trial court are not in dispute, the question of subject matter jurisdiction is one of law, and we review the trial court's ruling de

novo. *Id.* … In an appeal from a trial court's grant of a pretrial motion to dismiss under Trial Rule 12(B)(1), we accept as true the facts alleged in the complaint. *State ex rel. Zoeller v. Aisin USA Mfg., Inc.*, 946 N.E.2d 1148, 1149-50 (Ind. 2011), *reh'g denied*.

*Metz as Next Friend of Metz v. Saint Joseph Regional Medical Center*, 115 N.E.3d 489, 493-94 (Ind. Ct. App. 2018).

# Analysis

[6] The Taxing Authorities contend that the Marion County Superior Court, a court of general jurisdiction, cannot order the Treasurer to issue a larger property tax refund. They assert that subject matter jurisdiction could only lie with the Tax Court, upon satisfaction of statutory prerequisites and, moreover, only the Tax Court can decide whether its jurisdiction was invoked. The Homeowners Associations argue that, because the refund checks were unaccompanied by written final determinations from which to appeal, and the Indiana Legislature had not yet enacted Indiana Code Section 6-1.1-26-2.1 (including a "deemed denied" provision for refund claims filed after July 1, 2017, so that taxpayers could file an original action to claim a refund),[6] they had no means to get the controversy to the Tax Court.

---

[6] Effective July 1, 2017, Indiana Code Section 6-1.1-26-2.1(e) provides: "If a credit is not applied or a refund is not paid within one hundred twenty (120) days from the date a claim was filed under section 1.1 of this chapter, a claimant may file an original action claiming a refund in a court of competent jurisdiction in the county where the property is located. An original action must be filed by the later of four (4) years after the tax is paid, or four (4) years after the final disposition of an appeal by the county board, board of tax review, department of local government finance, or a court, with respect to a particular tax year."

[7] The Marion County Superior Court has subject matter jurisdiction over all civil and criminal cases, *see* Ind. Code § 33-29-1.5-2, except where exclusive jurisdiction has been conferred by law upon a different court, *Aisin*, 946 N.E.2d at 1152. "If the Tax Court has subject matter jurisdiction over a case, a trial court does not." *Robinson v. Dep't of Local Gov. Finance*, 99 N.E.3d 684, 688 (Ind. Ct. App. 2018).

[8] The general scope of authority given to the Tax Court is set forth in Indiana Code Section 33-26-3-1, which provides:

> The tax court is a court of limited jurisdiction. The tax court has exclusive jurisdiction over any case that arises under the laws of Indiana and that is an initial appeal of a final determination made by:
>
> (1) the department of state revenue with respect to a listed tax (as defined in IC 6-8.1-1-1); or
>
> (2) the Indiana board of tax review.

[9] A case "arises under" the tax laws if an Indiana tax statute creates a right or action, or the case principally involves collection of a tax or defenses to that collection. *State v. Sproles*, 672 N.E.2d 1353, 1357 (Ind. 1996). In addition to the "arises under" test, there is a second requirement to invoke the exclusive jurisdiction of the Tax Court; that is, there must be a "final determination" that the tax is owed. *Id.* A litigant must first exhaust administrative remedies before coming to the Tax Court; however, there must be an "adequate recourse at law." *Id.* at 1361. The requirement that existing remedies be adequate is rooted

in part in the concept that "Indiana cannot deprive its citizens of their property without due process of law." *Id.* at n.19 (citing U.S. Const. amend. XIV).

[10] In reliance upon this Court's recent guidance in *Robinson*, the Taxing Authorities successfully argued to the trial court that the instant case arises under the tax laws. The Homeowners Associations have not conceded as much, but they also do not develop an argument to the contrary. They claim that *Robinson* has "no relevance and no resemblance." Appellant's Brief at 26.

[11] In *Robinson*, we were concerned with the statutory criteria that a case "arise under" the tax laws. There, a township trustee had filed a complaint for declaratory judgment and injunctive relief against the Indiana Department of Local Government Finance ("the DLGF") and the Town of Griffith in the Lake Superior Court to prevent the town from seceding from Calumet Township. 99 N.E.3d at 687. Secession eligibility was based upon the DLGF's calculation of the statewide average township assistance property tax rate, and the trustee challenged the DLGF's method for calculating the tax rate and its failure to follow administrative rulemaking procedures. *Id.* The DLGF moved to dismiss the case on grounds that the trial court lacked subject matter jurisdiction; the trial court granted the dismissal upon its determination that the case "arises under" the tax laws. *Id.*

[12] On appeal of that dismissal, the *Robinson* Court summarized two cases that had previously considered the "arises under" concept, specifically *Wayne Township v. Indiana Department of Local Government Finance*, 865 N.E.2d 625 (Ind. Ct. App.

2007), *clarified on rehearing*, 869 N.E.2d 531, *trans. denied*, and *City of Fort Wayne v. Southwest Allen County Fire Protection District*, 82 N.E.3d 299 (Ind. Ct. App. 2017), *trans. denied*.

In *Wayne Township*, we sua sponte addressed the Hamilton Superior Court's jurisdiction over the Township's lawsuit against the DLGF and the Marion County Auditor challenging the DLGF's calculation of the Township's maximum permissible property tax levy. 865 N.E.2d at 627. The Township challenged the DLGF's calculation because it effectively reduced the amount of tax revenues the Township would receive from Marion County's county option income tax ("COIT"). *Id.* Although noting that the case was unique in that it involved "warring governmental entities rather than a taxpayer versus the government," we concluded that the case certainly arose under the tax laws of this state because it "principally involve[d]" the Township's attempt to collect a tax, namely what it believed to be its fair share of Marion County's COIT, based on its assertion that the DLGF inaccurately calculated the Township's maximum permissible property tax levy. *Id.* at 628. Thus, we concluded that the trial court lacked subject matter jurisdiction.

In contrast, in *City of Fort Wayne*, we concluded that the Allen Superior Court did have subject matter jurisdiction over an annexation dispute even though the allocation of tax revenues was at issue. 82 N.E.3d at 304. Specifically, the City filed a complaint seeking a declaration that it was entitled to receive property tax revenues relating to fire protection services from certain annexed territories. We emphasized that, unlike in *Wayne Township*, the parties did not dispute any tax assessment, did not request a change in tax levies, and were not attempting to collect a tax. *Id.* Indeed, "[n]o calculation to determine a specific tax assessment [needed to] be made, and no interpretation of tax laws [was] required." *Id.* Rather, the City's dispute merely centered on the intended recipient of taxes already

assessed and collected and thus it was not "quintessentially [a] tax matter." *Id.* (citing *Aisin*, 946 N.E.2d at 1153).

*Robinson*, 99 N.E.3d at 689-90. After reviewing those cases, the *Robinson* Court found the facts under consideration to be "similar to *Wayne Township* and dissimilar to *City of Fort Wayne*." *Id.* at 690. Calumet Township had challenged the DLGF's calculation method for determining the statewide average township assistance property tax rate, so that the case "squarely involve[d] interpretation and application of substantive tax law by a state agency charged with implementing that law and, as such, 'arises under' the tax laws of this state." *Id.* Observing that it was not a typical collection matter, the Court clarified: "Although not a direct challenge to a tax collection, this case clearly revolves around an earlier step in the taxation or assessment process." *Id.*

[13] More recently, in *D.A.Y. Investments LLC v. Lake County*, 106 N.E.3d 500 (Ind. Ct. App. 2018), a panel of this Court reviewed a dismissal, for lack of subject matter jurisdiction, of a complaint by several plaintiffs, collectively referred to as "Owners," against defendants collectively referred to as "Lake County Defendants." The Owners sought to enforce a settlement agreement that allegedly "required the Lake County Defendants to assess their 1,800 parcels at the values agreed to and listed in Exhibit A." *Id.* at 505. The Court concluded that the trial court did not have subject matter jurisdiction over "a case claiming error in the assessed value of property," explaining:

> The Lake County Defendants made no agreement to assess the Owner's property at a certain value going forward. Instead,

pursuant to paragraph 5, the parties agreed the properties "will be treated in the exact same manner as any other properties in Lake County, using the same methodologies."

Therefore, it is not possible to determine if the Lake County Defendants appropriately assessed the Owners' property based on the settlement agreement alone. The general manner and methodology of tax assessment in Lake County determines the appropriate assessments for the Owners' property.

*Id.* at 505-06 (record citations omitted). Ultimately, even though the case "arose under" the tax laws, the Tax Court might not hear the case due to the lack of a "final determination."[7] *See id.* at 506. Nonetheless, even if the Tax Court did not hear the case, the trial court lacked jurisdiction. *Id.*

[14] According to the Homeowners Associations, the *D.A.Y.* Court acknowledged the possibility that a court of general jurisdiction might enforce a settlement agreement. The Homeowners Associations argue that the Taxing Authorities simply changed their position after the time for appealing the zero assessments had passed and now refuse to abide by their agreements. They assert that no construction of tax law or tax expertise is required; rather, they are simply entitled to every dollar they paid in taxes for the subject parcels. Based upon a zero assessment, the tax liability would be zero. But the Homeowners

---

[7] The Court observed that, although the claim of error in the assessed value of property was one that would fall within the exclusive jurisdiction of the Tax Court, the Owners may have forfeited an appeal to the Tax Court by failing to avail themselves of the administrative process, which would culminate in "a final determination by the Indiana Board of Tax Review" pursuant to Indiana Code § 6-1.1-15-4. *D.A.Y. Investments, LLC*, 106 N.E.3d at 506.

Associations do not have a written settlement agreement providing for a sum certain to be refunded, as opposed to credited to a future tax year. They also seek interest payments, to which they claim entitlement under the property tax scheme. As in *Robinson*, this matter is not a direct challenge to a tax collection, but it arose from the "taxation or assessment process." 99 N.E.3d at 690. And the resolution may be said to "revolve around an earlier step." *See id.* Like *Robinson*, "this case squarely involves interpretation and application of substantive tax law by a state agency charged with implementing that law and, as such, 'arises under' the tax laws of this state." *Id.*

[15] As for whether there has been a "final determination," the arguments of the parties have been less than straight forward. The Homeowners Associations have pointed out that they obtained "final determinations" as to tax assessment values and subsequently requested refunds.[8] They insist that they have done all that they could do to exhaust available administrative remedies but also suggest that their refund claims might be characterized as pending. The Taxing Authorities do not concede that the Homeowners Associations exhausted their administrative remedies, but they do not identify any additional step that the Homeowners Associations could have taken under the then-existing law.

---

[8] They claim to have engaged in some informal attempts at resolution after receiving the allegedly deficient checks issued by the Treasurer.

[16] In *Marion County Auditor v. Revival Temple*, we explained the process for requesting a refund of property tax already paid:

> Indiana Code chapter 6-1.1-26 provides a statutory mechanism by which a party may request a refund of a property tax that has already been paid. This framework requires that a party seeking the refund file the claim with the county auditor. Ind. Code § 6-1.1-26-1(1). The claim for a refund is then reviewed by the department of local government finance, the county board of commissioners, or the Indiana Board of Tax Review, from which it may be appealed and reviewed in the Indiana Tax Court. Ind. Code §§ 6-1.1-26-2 to -4. Indiana Code § 6-1.1-26-5 provides that a claim for a refund may be "allowed either by the county board of commissioners, the department of local government finance, the Indiana board, or the Indiana tax court on appeal[.]" Because the statutorily prescribed mechanism for filing a claim for a refund of property taxes already paid is through administrative proceedings that the Legislature has provided may end with judicial review by the Indiana Tax Court, the trial court lacked subject matter jurisdiction to order a refund.

898 N.E.2d 437, 445-46 (Ind. Ct. App. 2008), *trans. denied*.

[17] "For purposes of Tax Court jurisdiction, a final determination is an order that determines the rights of, or imposes obligations on, the parties as a consummation of the administrative process." *Id.* (citing *State Bd. of Tax Com'rs v. Ispat Inland, Inc.*, 784 N.E.2d 477, 481 (Ind. 2003)). The lack of a "final determination" by a tax-related agency is equivalent to a failure to exhaust administrative remedies, depriving the Tax Court of subject matter jurisdiction. *Id.* A party cannot circumvent this requirement by filing an action in a trial court rather than the relevant administrative agency. *Id.*

[18]     But here the Homeowners Associations did not circumvent a requirement. They obtained "final determinations" as to tax assessment value, determinations which the Homeowners Associations had no incentive to appeal and which the Taxing Authorities did not appeal. The Homeowners Associations requested refunds, which were not denied. They argue that they needed specific written rulings on their refund forms. But they simply could not compel the Treasurer to provide along with the checks a written "final determination" to satisfy the second prerequisite of Indiana Code Section 33-26-3-1. With no final determination by the Indiana Board of Tax Review, there is no petition for judicial review with the Indiana Tax Court. *See id.*

[19]     At bottom, this case presents a claim of tax overpayment and inadequate remedy at law to obtain a full refund. The Marion Superior Court lacks authority to determine whether the Homeowners Associations overpaid their taxes. Nor is the court of general jurisdiction the appropriate court to determine if the Treasurer failed to satisfy an obligation in response to a claim for refund on Form 17-T. How the statutory scheme operates is a tax question. Regardless of the legal theory relied upon, all challenges to the tax laws are to be tried in the Tax Court. *Sproles*, 672 N.E.2d at 1357. Finally, whether the Homeowners Associations exhausted available administrative remedies is not a question for a court of general jurisdiction. A taxpayer cannot be deprived of an opportunity to obtain a "final determination" and ultimately reach the Tax Court. *See Sproles*, 672 N.E.2d at 1361 (recognizing that deprivation of property cannot occur without due process). But whether a "final determination" has

been made is best determined by the Tax Court, "with its greater expertise." *Robinson*, 99 N.E.3d at 690.

# Conclusion

[20] The Marion Superior Court lacks subject matter jurisdiction to order the Treasurer to issue refunds for overpayment of taxes to the Homeowners Associations.

[21] Affirmed.

Riley, J., and Pyle, J., concur.